WILLIAM B. ARNOLD *vs.* NORTH AMERICAN CHEMICAL
COMPANY.

Suffolk.     November 11, 1918. — February 27, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Contract*, Construction, Performance and breach. *Words*, "Sale."

In an action against a chemical corporation for the breach of a contract in writing,
it appeared that the defendant by the contract agreed "that if it ever sells the
filler business for Canada or for any foreign country," it will pay the plaintiff a
proportional part of the price received. The filler business referred to was the
right to manufacture and sell a certain patented compound known as the
Besto shoe filler used in the manufacture of shoes. Thereafter the defendant
granted to a British corporation, which theretofore had been its sole agent to
sell "Besto" in England, "an exclusive license under the patents aforesaid" in
the territory of Great Britain and Germany "to manufacture, use, exercise and
sell its Besto bottom filler" between certain dates, covering a period of about
ten years. The defendant agreed to make no sales of the filler except for its
American trade and agreed also to pay one half of the British income tax in five
annual payments. While this contract was in force a supplemental agreement
was made between the defendant and the British corporation called a "License
Extension," extending the term of the license for a further period of five years
on six months' notice to the defendant. By this supplemental agreement the
defendant agreed to relieve the British corporation from paying German taxes
and the defendant was to have the privilege of selling "Besto" in Germany,
Australia and South America. The defendant also agreed to continue to supply
the British corporation with the compound for the manufacture of the filler on
stipulated terms and to guarantee the compound to be correct, and was not
required to transfer the formula for the preparation of the compound to the
British corporation until the end of five years. *Held*, that the license and
license extension granted by the defendant to the British corporation were not
a sale of the "filler business" within the meaning of the defendant's contract
with the plaintiff.
The word "sale" means the transfer of property from one person to another for
a consideration of value. It "implies ordinarily the passing from seller to
buyer of the general and absolute title to property as distinguished from a
special interest, a bailment, a license, a lease, a pawn or other limited right
falling short of complete ownership." By RUGG, C. J.

CONTRACT for the alleged breach of a contract in writing dated
January 20, 1908, relating to the "Besto" shoe filler, whereby, in
consideration of the agreement of the plaintiff therein contained,
the defendant "agrees that if ever it sells the filler business for

Canada or for any foreign country, the said Arnold shall receive from the net proceeds of every such sale a share corresponding to his recent proportionate holdings of stock in said Company," as therein further specified. Writ dated April 21, 1916.

The case was referred to an auditor, and, after his first report, was recommitted to him. The auditor's report and his supplemental report contained, among other findings, the facts that are stated in the opinion. It was agreed by the parties that the auditor's findings of fact should be final.

In the Superior Court the case was heard by *J. F. Brown, J.,* on motions filed by the plaintiff and by the defendant, each asking for judgment upon the auditor's reports. No other evidence was introduced by either party. The judge found that the facts were as stated by the auditor in his reports and at the request of the parties reported the case for determination by this court.

The case was submitted on briefs.

*J. B. Studley & G. C. Coleman,* for the plaintiff.

*S. L. Whipple, W. R. Sears & H. W. Ogden,* for the defendant.

RUGG, C. J. The defendant in a written contract with the plaintiff under date of January 20, 1908, agrees "that if ever it sells the filler business for Canada or for any foreign country," it will pay him a proportionate part thereof. The question is whether the defendant has become liable under this term of the contract. The "filler business" was the right to manufacture and sell "a certain compound known as 'Besto' shoe filler, a patented article used in the manufacture of shoes." The defendant entered into a contract on April 5, 1909, whereby it granted to a British corporation, which theretofore had been its sole agent to sell "Besto" in England, "an exclusive license under the patents aforesaid in the territory aforesaid [Great Britain and Germany] to manufacture use exercise and sell its Besto bottom filler . . . from the date hereof to the 14th day of August, 1919, subject to the further terms and conditions of this agreement," with the right to assign the license or to grant sublicense or sublicenses thereof. Several terms and conditions follow as to the furnishing by the defendant to the British corporation of patterns of "outfits" (which were machines for heating, mixing and applying the "Besto") and of "the chemical compound required for the aforesaid manufacture." At the end

of five years either party might terminate this part of the contract by one month's notice, whereupon the defendant was to furnish the British licensee with the formula by which to make the compound and further instructions as to its preparation, if necessary, under some restrictions as to time. The payment to the defendant was of a gross sum in several instalments. But in this connection it was stipulated that in the event that the defendant should default for twenty-one days in furnishing the chemical compound required by the British licensee for the manufacture of "Besto," the latter should have the option either to demand the formula with which the compound was made with instructions as to its preparation or to require a refund of all payments made to the defendant under the contract. It further was provided that in case the British licensee should bring suit against any infringer of the patents before November, 1910, the defendant was to bear one half the court costs and lawyers' fees and be consulted about and approve such expenses and have the right itself to present testimony. The defendant agreed to make no sales of the filler except for its American trade, and agreed also to pay one half the British income tax in five annual payments. On May 6, 1914, a supplemental agreement called a "License Extension" was entered into between the parties, extending the term of the license for a further term of five years on six months' notice to the defendant. It was recited that the British corporation desired to discontinue certain of its obligations, particularly as to Germany, and the defendant thereafter was to relieve it from paying German taxes and was to have the privilege of selling "Besto" in Germany, Australia and South America. The defendant also agreed to continue to supply to the British corporation the compound for the manufacture of the filler on stipulated terms and to guarantee the compound to be correct.

The point to be decided is whether these two contracts between the British licensee and the defendant constituted a sale of its business in a foreign country, within the meaning of the contract of January 20, 1908, between the plaintiff and the defendant.

There is no evidence in the record respecting the patent laws of Great Britain or Germany touching the sale or assignment of patents or the granting of licenses to manufacture, use, exercise and sell patented articles. Therefore the words of the contracts

are to be interpreted and the acts of the parties are to be construed according to common law principles prevailing in this Commonwealth, where the contract was made.

The word "sale" has a well defined meaning. It is the transfer of property from one person to another for a consideration of value. *Howard* v. *Harris,* 8 Allen, 297, 299. *Commonwealth* v. *Woelz,* 219 Mass. 37, 38. The sales act, St. 1908, c. 237, § 1. The word implies ordinarily the passing from seller to buyer of the general and absolute title to property as distinguished from a special interest, a bailment, a license, a lease, a pawn or other limited right falling short of complete ownership. The distinction between a sale as a complete change of title and other transactions amounting merely to the acquisition of some particular property right is well established. *Hunt* v. *Wyman,* 100 Mass. 198. *Kennedy* v. *Drake,* 225 Mass. 303. *Storm* v. *Baker,* 150 U. S. 312, 328–330. *Sewell* v. *Burdick,* 10 App. Cas. 74. *Smith* v. *Niles,* 20 Vt. 315.

Plainly the contract between the defendant and the British corporation in form was not a sale. The decisive descriptive words used are "exclusive license." That means, considered abstractly, a privilege or authority granted to another to do that which he would not otherwise be justified in doing, by one who possesses and retains a superior right or power. As applied to a patent it signifies the assignment by the patentee to another of rights less in degree than an interest in the patent itself. *Waterman* v. *Mackenzie,* 138 U. S. 252. *Pope Manuf. Co.* v. *Gormully & Jeffery Manuf. Co.* 144 U. S. 248. The law, however, will not be bound by the form of the transaction, but giving due effect to all the words used will look to the substance of the matter in order to determine whether there has been a sale. Testing the contract in this way, it confers a license and is not the equivalent of a sale or absolute transfer. It was limited in point of time. It does not appear what was the unexpired term of the patent rights in Great Britain or in Germany. But the time during which the British corporation had rights under the patents was definitely restricted and well may have been less than for the term of the patents. The defendant as the owner of the patent might be held liable to some extent for expenses in necessary suits to restrain infringements of the patents. The

defendant also was obliged to furnish the chemical compound essential to the manufacture of the patented article, and was not required to transfer the formula for its preparation to the British corporation until the end of five years. If the defendant failed in this particular, it was obliged to refund all the payments it had received. It also was to pay one half the British income tax. The combined effect of these clauses demonstrates that the entire title to the patents in Great Britain was not transferred to the British corporation and hence that there was no sale. The obligation upon the defendant to pay part of the expenses of infringement litigation, and to bear a part of the income tax, and the retention by the defendant of the formula of the compound, are incompatible with a complete divestment of the defendant's interest in the British and other patents. The other conditions which have been enumerated are confirmatory of an intention as expressed in the contract by the defendant not to sell and by the British company not to buy the filler business. The British corporation, without the continued performance by the defendant of the stipulations on its part to be performed under the contract, would be helpless to avail itself of the rights under the British patents to manufacture, use and sell "Besto" in Great Britain. Without the aid of the defendant the plaintiff could not use the patent monopoly in Great Britain. The effect of the written instruments was, as stated by their terms, to grant a license and not to make a complete transfer. This conclusion appears to us to be in harmony with *Howe* v. *Wooldredge,* 12 Allen, 18, *Standard Button Fastening Co.* v. *Ellis,* 159 Mass. 448, *Waterman* v. *Mackenzie,* 138 U. S. 252, *Gayler* v. *Wilder,* 10 How. 477, and *D. M. Sechler Carriage Co.* v. *Deere & Mansur Co.* 51 C. C. A. 242 (113 Fed. Rep. 285).

*Judgment for the defendant.*