HANNÀH T. OSGOOD *vs.* TAX COMMISSIONER.

Worcester. December 1, 1919. — February 26, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Tax*, On income. *Sale. Purchase. Corporation*, Reorganization. *Words*, "Sales," "Purchases."

If the directors of a business corporation, incorporated under the laws of the State of Maine and having a usual place of business in this Commonwealth, which has outstanding both preferred and common stock, cause to be organized under the laws of the State of Maine another corporation, issuing common stock only, and all of the stockholders, both preferred and common, of the original corporation exchange their shares for shares of stock of the new corporation, after which the original corporation transfers all its property to the new corporation, which continues the business as before; and if an inhabitant of this Commonwealth, who owned shares of the preferred and of the common stock of the original corporation, exchanged them for shares of stock of the new corporation, which were of greater value, such transaction is a sale of the shares in the original, and a purchase of the shares in the new corporation and the gain resulting therefrom is subject to a tax under St. 1916, c. 269, § 5 (c).

PETITION, filed in the Superior Court on June 4, 1919, under St. 1916, c. 269, § 20, appealing from a refusal of the Tax Commissioner to abate an income tax of three per cent assessed under St. 1916, c. 269, § 5 (c), on the sum of $3,944.25 alleged by the Tax Commissioner to have been received by the petitioner as a gain on a sale of one thousand three hundred shares of the preferred and one thousand shares of the common stock of the Draper Company for which she received four thousand one hundred twenty-five shares of the capital stock of the Draper Corporation under the circumstances described in the opinion.

The case was heard in the Superior Court by *Lawton*, J., without a jury, upon an agreed statement of facts. The material facts are stated in the opinion. It also was agreed solely for the purposes of this case that the tax as computed by the Tax Commissioner was

excessive, and that, if a tax should be assessed, it should not be in excess of $2,853.75. The judge reported the case to this court for determination, it being agreed that, if the petitioner was not properly subject to taxation on account of the transaction in question, judgment was to be entered for the petitioner in the sum of $4,046.12; otherwise judgment was to be entered for the petitioner in the sum of $1,119.03, with interest from July 7, 1919, and costs in either event.

*P. Nichols,* (*W. Williams* with him,) for the petitioner.

*W. H. Hitchcock,* Assistant Attorney General, for the respondent.

RUGG, C. J. This is a petition under St. 1916, c. 269, § 20. It involves the validity of a tax assessed on an alleged gain in the purchases or sales of intangible personal property under § 5 (c) of said act. The salient facts are that the petitioner on January 1, 1916, was the owner of one thousand three hundred shares of the preferred and one thousand shares of the common stock of the Draper Company, a Maine corporation conducting an extensive manufacturing business at Hopedale in this Commonwealth. That corporation had outstanding preferred stock of the par value of $2,000,000 and common stock of the par value of $6,000,000. The directors of that corporation, in June, 1916, caused a new corporation to be organized under the laws of Maine, called the Draper Corporation, which voted to issue its stock, all being common, of a par value of $17,500,000, in exchange for the stock of the Draper Company, two and one half of its shares for each one share of the common stock of the old company, and one and one quarter of its shares for each one share of the preferred stock of the old company. The petitioner accepted the offer to exchange on this basis and received for the surrender of her shares of stock in the old company four thousand one hundred twenty-five shares of stock in the Draper Corporation. The new corporation became the owner of substantially all of the stock of the old company and caused to be transferred to itself all the assets of the old company, and carried on the business of the latter through the same officers without interruption and without outward indication of change. The Tax Commissioner assessed a tax upon the gain which he ascertained by subtracting the value of the shares in the old company on January 1, 1916, (§ 7 of said act,) from the value of the shares of the new company at the time of the exchange in July of

that year. No question now is raised as to the method of ascertaining the tax. The amounts have been agreed upon. The question is whether that gain under the circumstances disclosed is subject to taxation under St. 1916, c. 269, § 5 (c). Its governing words are, "The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not the said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum."

Tax statutes must be construed strictly. The power to tax must be conferred by plain words or it does not exist. It is not to be extended by implication or by invoking the spirit of the law. *Sewall* v. *Jones,* 9 Pick. 412. *Hill* v. *Treasurer & Receiver General,* 229 Mass. 474, 475.

The point to be decided is whether the transaction in which the petitioner engaged rightly can be said to be comprehended within the statutory words "purchases or sales."

Various definitions of "sale" are to be found in decisions and among text book writers. Those commonly given when the attempt is made to fix with accuracy its meaning are familiar. It is said in Benjamin on Sales, § 1, to be "a transfer of the absolute or general property in a thing for a price in money." In § 2 that author elaborates, with references to authorities, the point that the price must be in money and that any other consideration constitutes barter or contract for the transfer of property. In *Five Per Cent Cases,* 110 U. S. 471, 478, Mr. Justice Gray said, "A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent." *Gardner* v. *Lane,* 12 Allen, 39, 43. Price in money is essential to a strict sale. The transfer of title for a consideration of a different nature is a barter or exchange. See, for other definitions, 35 Cyc. 25; 23 R. C. L. 1186. On the other hand, there are numerous cases where the word "sale" in statutes has been given a broader signification. The modern tendency is in that direction. In *Gallus* v. *Elmer,* 193 Mass. 106, at page 109, it was said by Mr. Justice Hammond, in holding a transfer of property by way of accord and satisfaction of a pre-existing debt to be a sale contrary to the sales in bulk act, "While it is true that in its strictest sense a sale is a transfer of personal property in consideration of money paid or to be paid, still in the interpretation of statutes it is often held to include barter and any transfer of

personal property for a valuable consideration." Said Chief Justice Bigelow, in *Howard* v. *Harris*, 8 Allen, 297, at page 299: "In a general and popular sense, the sale of an article signifies the transfer of property from one person to another for a consideration of value, without reference to the particular mode in which the consideration is paid. . . . The legal distinction between a sale and an exchange is a purely artificial one; the rules of law are the same as applied to both transactions." A statute forbidding sales of intoxicating liquor has been held to include barter and exchange as well as strict sales. *Commonwealth* v. *Clark*, 14 Gray, 367, 372. *Commonwealth* v. *Woelz*, 219 Mass. 37, 38. Exchanges and contracts to exchange are included within the definition of "sale" in the sales act. St. 1908, c. 237, §§ 1, 9 (2), 75. Williston on Sales, §§ 166, 170. See also *Arnold* v. *North American Chemical Co.* 232 Mass. 196, 199. *Goward* v. *Waters*, 98 Mass. 596. *Friend* v. *Childs Dining Hall Co.* 231 Mass. 65, 68, 69. The word "sales" in the statute is used in combination with the word "purchases." That is a word in its abstract meaning of somewhat more comprehensive signification. "It includes every lawful method of coming to an estate by the act of a party, as opposed to the act of law." *Burt* v. *Merchants' Ins. Co.* 106 Mass. 356, 364.

The aim of the court in every instance must be to ascertain as nearly as possible the intent and purpose of the Legislature.

On analysis, the transaction out of which this controversy arises was this: The petitioner was the owner of stocks of an ascertained value on January 1, 1916. In the following July, without selling these stocks for cash, she used them as the consideration with which to subscribe for and acquire by purchase other stocks in a new and different corporation. Although the property owned by the new corporation was identical with that owned by the old corporation, it nevertheless plainly was a different legal entity. *Brighton Packing Co.* v. *Butchers Slaughtering & Melting Association*, 211 Mass. 398. *Marsch* v. *Southern New England Railroad*, 230 Mass. 483, 498. The stock obtained by the petitioner through exchange was different in kind and not merely in degree from that which she owned before. It was not the same corporation and the stock itself was different in nature. A change of investment had been made both in name and in essence. It would seem something of a wrench to say that the disposal of the stock in the old corpora-

tion for stock in the new is not a sale for purposes of taxation, when, if the same transaction was presented for consideration under the sales act, it would inevitably be treated as a sale. It hardly would be consistent to hold that exchanging grain for spirituous liquors was a sale constituting a crime, as was held by this court in *Commonwealth* v. *Clark,* 14 Gray, 367, and to say that exchanging stock in one corporation for stock in another corporation was not a sale for taxation purposes. Whether the disposal of the stock in the old company be treated as a strict sale or not, there seems to be no escape from holding that the procurement of the stock in the new corporation was a purchase. That word, unless narrowed by its context, signifies the acquisition of title to any commodity for cash, on credit, or for any other equivalent agreed upon. This is its ordinary meaning according to the common understanding of the business world. *Berger* v. *United States Steel Corp.* 18 Dick. 809, 817. Doubtless there are connections in which the word is used in a more restricted sense. *Robotham* v. *Prudential Ins. Co.* 19 Dick. 673, 685. *People* v. *Duffy-Mc-Innerney Co.* 122 App. Div. (N. Y.) 336, affirmed in 193 N. Y. 636. There is nothing in the context of the present statute to indicate limitations upon the natural meaning of the word. "Purchase," both in its popular and in its legal signification is broad enough to include the acquirement of stock through subscription as well as by bidding on the stock exchange.

Tested by the difference in value of the stocks purchased as compared with those exchanged for them at their appraisal at the time fixed by § 7 of the act, the petitioner had realized a gain. This is not the calculation of a mere paper profit or an unrealized increase in value, which is not taxable under the act. *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 530. The gain had materialized by procuring title to a wholly different kind of stock in a new corporation, whose market value was definite and ascertained. The complainant had wholly parted with the old and become the legal owner of new property. It follows that a tax on this gain was lawful.

In accordance with the terms of the report, the entry may be, judgment for the petitioner in the sum of $1,119.03 with interest from July 7, 1919, and costs.

*So ordered.*