JOSEPH W. MACDONALD vs. ROBERT S. HAWKER.[1]

Suffolk. January 16, 1981. — May 27, 1981.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Contract,* Performance and breach, Damages, Construction. *Sale,* What constitutes. *Damages,* Breach of contract.

A general partner's conveyances of partnership property for nominal consideration, after which the property was immediately reconveyed to the partnership, did not constitute "sales" for which the general partner was obligated to pay a portion of the proceeds to a limited partner pursuant to a written agreement [869-874]; nor did such conveyances constitute a breach of the general partner's agreement to sell the property for fair market value where the partnership continued to hold title to the property and it did not appear that the general partner had refused to sell the property to anyone offering to pay fair market value or that he sought to avoid his obligations under the agreement by making the conveyances [874-875].

A general partner was not entitled to recover damages resulting from a limited partner's breach of an agreement not to assist any of the other limited partners with respect to any grievance claimed against the general partner where the evidence of actual damage was speculative and uncertain. [875-878]

CIVIL ACTION commenced in the Superior Court on November 21, 1977.

The case was heard by *Nolan,* J.

*Elizabeth Butler Heath* for the defendant.

*John F. Roy* for the plaintiff.

---

[1] The plaintiff brought his complaint against the defendant Hawker individually and as a general partner of P.G.P. Property Company. He also named as defendants George V. Trbovich, individually and as a limited partner of P.G.P. Property Company, Lawrence K. Trainor, Mortgage Shops, Inc., and the Lincoln Trust Company. After trial, the complaint was dismissed as to all the defendants except Hawker, and the propriety of that dismissal is not at issue.

PERRETTA, J.  By this appeal we are asked to determine: (1) whether, as alleged by MacDonald in his complaint, Hawker's conveyance of realty for nominal consideration, followed immediately by his taking back title to the land, constituted a breach of his agreement to pay MacDonald a sum certain from the sale proceeds of the land which was to be sold for fair market value; and (2) whether Hawker sustained his burden of proving those damages which he alleged in his counterclaim that he suffered as a result of MacDonald's failure to keep his promise not to assist any of Hawker's partners in any grievance they might have as a result of their business dealings with him.  We reverse that part of the judgment which is in MacDonald's favor on his complaint, and we affirm that portion dismissing Hawker's counterclaim.

The record before us contains the findings and rulings of the judge, Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), a transcript of the evidence, and numerous exhibits.  From those findings, supplemented by portions of the evidence, we recite the facts.

In 1973, Hawker, a real estate developer, formed a limited partnership, P.G.P. Property Company (P.G.P.), in which he and two others, Robert McGlone and Barry Keene, were general as well as limited partners and George Trbovich was a limited partner.  MacDonald became a limited partner shortly thereafter when he invested $10,000 in P.G.P.[2]  Consistent with the purpose of the partnership, which was to acquire, develop, and sell real estate, P.G.P. bought a subdivided tract of land known as Brookwood, in Hanover in 1973.  Construction of houses on the lots began in 1974, but during that year, as well as in 1975, numerous delays occurred as Hawker wrestled with various regulations of the Hanover planning board, conservation commission, and board of health.  According to Hawker's testi-

---

[2] The partnership agreement was amended in 1974, making Hawker the sole general partner and leaving the other four members as limited partners.

mony, the partnership was beset by severe financial problems, and in order to generate a cash flow, he, as general partner, conveyed two of P.G.P.'s lots to himself and his wife. Whether Hawker's intention was honest is not here material. It is sufficient for us to relate only that the transaction prompted MacDonald, in April of 1975, to bring an action in the Superior Court for an accounting, alleging that the conveyance was illegal and that it constituted a fraud upon the limited partners.[3]

That action terminated without a trial when the parties reached an agreement for settlement, MacDonald quit the partnership, and an agreement for judgment was entered on January 23, 1976, pursuant to Mass.R.Civ.P. 58, as amended, 371 Mass. 908 (1977). We set out the terms of the parties' obligations under the settlement agreement and the facts leading up to the allegations of breaches as they pertain to each of the parties' claims.

1. *MacDonald's complaint.* The pertinent terms of the agreement which control the outcome of the controversy presented on MacDonald's complaint describe Hawker's obligation to be:

> "Within three (3) business days of the sale of each and every PGP Property Company lot of land located in the Brookwood subdivision, to pay the sum of $1,666.67 [to MacDonald] until $10,000 in the aggregate has been paid from said lot sale proceeds . . . All sales of lots shall be made pursuant to the purchase and sale agreement with Robert A. Junior, or, if said sales are made to others, the price charged shall be fair market value."[4]

On June 26, 1977, Hawker conveyed six of the Brookwood lots to his limited partner and father-in-law,

---

[3] That case is not before us.

[4] The record indicates that Robert A. Junior was a local builder who had executed a purchase and sale agreement for one of the Brookwood lots in March, 1975, at a purchase price of $11,000.

Trbovich, and five to his "long time friend" Lawrence K. Trainor. The deeds to Trbovich and Trainor recite that those conveyances were made "in full consideration of One Dollar," or, as found by the judge, for "nominal consideration." Those deeds were recorded that same day, and, also on that day, Trbovich and Trainor conveyed the eleven lots back to the partnership. These deeds back, however, were not recorded until March 13, 1978. The conveyances to Trbovich and Trainor were made without notice to MacDonald, who nonetheless learned of them and commenced this action on November 21, 1977. Because the lots had been sold for less than fair market value and because he had not been paid within three days after the sales, or at all, MacDonald requested that the sales to Trbovich and Trainor be set aside as fraudulent, see G. L. c. 109A, §§ 1-13, and that he be awarded $10,000 for breach of the settlement agreement.

At trial, Hawker attempted to justify the transactions on the following basis. In May of 1977, the Hanover planning board published notice of its intention to amend its zoning by-law in such a fashion that Hawker, based upon the advice of his attorney, would be compelled either to "stagger" the record ownership of the lots so that no two contiguous lots would be owned by the same party or consolidate the eleven lots into seven, thereby losing four. See G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3. See also *Sturges* v. *Chilmark*, 380 Mass. 246, 260-261 (1980); *Lee* v. *Board of Appeals of Harwich, ante* 148, 151 n.4 (1981).[5]

In considering whether those conveyances without subsequent payments to MacDonald constituted breaches of the agreement by Hawker, we bear in mind that "[i]t is to be presumed that parties employ all the provisions and phrases of a written contract with the purpose that each has an appropriate meaning. In interpreting contracts every word is

---

[5] Hawker also testified that his checkerboarding attempt was ultimately unsuccessful and that the undesired consolidation was required.

to be given force so far as practicable. [Citations omitted.] All parts of an agreement are to be construed together as constituting a single and consistent arrangement. The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." *Crimmins & Pierce Co.* v. *Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 375 (1933). See *Ucello* v. *Cosentino*, 354 Mass. 48, 51-52 (1968); *Johnson* v. *Worcester Business Dev. Corp.*, 1 Mass. App. Ct. 527, 529 (1973). Moreover, in our consideration we are not bound by the judge's conclusions because the problem of interpretation of this contract is not affected by his findings of fact. *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973).

The terminology used by the parties is neither ambiguous nor complex, and it appears clear to us that Hawker and MacDonald intended that the latter would be paid the money due him from the proceeds received from the sales of the Brookwood lots. "The word 'sale' has a well defined meaning. It is the transfer of property from one person to another for a consideration of value. *Howard* v. *Harris*, 8 Allen 297, 299 [1864]." *Arnold* v. *North America Chem. Co.*, 232 Mass. 196, 199 (1919). See also *Osgood* v. *Tax Commr.*, 235 Mass. 88, 90-91 (1920); *E. I. duPont de Nemours & Co.* v. *Kaufman & Chernick, Inc.*, 337 Mass. 216, 219-220 (1958). The consideration for a sale of these lots, as it relates to buyers other than Robert A. Junior, was set by the agreement at fair market value. "Fair market value is defined as 'the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market.' *Epstein* v. *Boston Housing Authy.*, 317 Mass. 297, 299 (1944), quoting from *Commissioner of Corps. & Taxn.* v. *Worcester County Trust*, 305 Mass. 460, 462 (1940)." *Correia* v. *New Bedford Redevelopment Authy.*, 375 Mass. 360, 361 (1978). See also *American Fid. Co.* v. *Harney*, 351 Mass. 163, 169-171 (1966) ("fair consideration" under G. L. c. 109A, §§ 3, 4); *Mashpee Wampanoag Indian Tribal Council, Inc.* v. *Assessors of Mashpee*, 379 Mass. 420, 421 (1980) ("fair cash valuation"

under G. L. c. 59, § 38). Hawker's obligation was to pay MacDonald "from said lot sale proceeds," i.e., to pay MacDonald with "what is produced by or derived from [the sale] by way of total revenue." Webster's Third New International Dictionary (1971), defining "proceeds." Cf. G. L. c. 106, § 9-306(1), as appearing in St. 1979, c. 512, § 7.[6]

Viewing the plain language and intent of the agreement with the substance and realities of the conveyances out by Hawker and the deeds back by Trbovich and Trainor, we conclude that those transactions were not sales which obligated Hawker to pay MacDonald in accordance with the agreement. *Arnold* v. *North Am. Chem. Co.*, 232 Mass. at 199. *Mills* v. *Mills*, 4 Mass. App. Ct. 273, 277-278 (1976). Cf. *Higgins* v. *Smith*, 308 U.S. 473 (1940) (in determining tax consequences of transfer of assets, substance of a transaction and not its form controls); *McElhinney* v. *Belsky*, 165 Pa. Super. 546 (1949), and *Whiteman & Co.* v. *Fidei*, 176 Pa. Super. 142 (1954) (both looking to substance of conveyances to determine if sales within meaning of brokerage contracts had occurred). Keeping in mind, however, that the judge found and ruled that Hawker violated his agreement "to sell the remaining lots for fair market value in transferring title to Trbovich and Trainor for nominal consideration," the question next to be resolved is whether those conveyances, although not sales, affected MacDonald's rights under the agreement so as to give rise to a cause of action.

In light of the facts that Hawker did not give MacDonald notice of the transfers, that Hawker did not record the deeds from Trbovich and Trainor, and that Hawker had conveyed lots to himself and his wife in the past, we think that MacDonald reasonably could have believed that the transfers

---

[6] Hawker places great reliance on the word "proceeds" to argue that their existence is a condition precedent to his duty to pay MacDonald, which he did not violate because the conveyance generated no proceeds. See e.g. *Palmer* v. *Guillow*, 224 Mass. 1 (1916). While close to the mark, the argument falls short of it. Such reasoning can prevail only if Hawker has done nothing to frustrate or prevent his receipt of proceeds from which he was to pay MacDonald.

were improperly motivated and in breach of the agreement. The judge stated that he was "not satisfied that Hawker was entirely motivated by a desire to circumvent the zoning provisions."[7]  We regard that statement as constituting an unreviewable assessment of Hawker's credibility. *Matsushita Elec. Corp. of America* v. *Sonus Corp.*, 362 Mass. 246, 254 (1972). However, MacDonald's suspicions, no matter how well founded, and Hawker's motive, whatever it may have been, are not here relevant. The partnership, so far as the record indicates, still holds title to the land, thereby effectively satisfying MacDonald's demand that the transfers be declared void and set aside. While Hawker maintains the land is now virtually worthless, MacDonald has neither alleged nor shown that Hawker has refused to sell the lots to purchasers offering to pay fair market value. While Hawker has argued that no proceeds resulted from the transfers, he has never asserted the conveyances as a means of avoiding or frustrating his contractual obligations or otherwise releasing him from the duty to pay MacDonald when the lots are in fact sold. See *Gulf Oil Corp.* v. *American La. Pipe Line Co.*, 282 F.2d 401 (6th Cir. 1960); *Shear* v. *National Rifle Assn. of America*, 606 F.2d 1251 (D.C. Cir. 1979); 5 Williston, Contracts § 677 (3d ed. 1961); Restatement (Second) of Contracts § 269 (Tent. Draft No. 8, 1973). We conclude that Hawker has not violated his agreement with MacDonald, by which he remains bound and obligated to perform unless otherwise relieved from so doing.

2. *Hawker's counterclaim.* The settlement terms which form the basis of Hawker's counterclaim are contained in an affidavit which MacDonald signed and made a part of the settlement agreement. The pertinent portions of that affidavit were:

---

[7] MacDonald argues that this constitutes a finding that Hawker was motivated by an intent to avoid paying him. We do not accept MacDonald's reading of the finding, and if we did we would have to conclude that it was without record support and clearly erroneous. *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 161 (1977). The judge made no other finding or comment concerning Hawker's motivation.

"The undersigned . . . does hereby warrant to refrain from representing, cooperating with, or assisting in any way any person or entity who was or is a . . . limited partner in . . . PGP Property Company . . . against . . . Robert S. Hawker . . . and . . . does agree to indemnify and save harmless . . . Robert S. Hawker . . . who may be damaged by any said breach or violation."

In March of 1978, MacDonald, an attorney, acted as counsel for McGlone, one of Hawker's limited partners in P.G.P., see note 2, *supra,* in an action against Hawker. As found by the judge, McGlone's action was "predicated in part on allegations of wrongdoing by Hawker similar to, if not identical with, the allegations by MacDonald in the instant suit. In addition, McGlone seeks redress for wrongs done by Hawker in connection with a Norwell development which is in no way related to the allegations of the instant suit." The judge further found that MacDonald's representation of McGlone consisted of drafting and filing the complaint and his appearance, which was thereafter withdrawn.

The judge ruled that by those actions MacDonald violated his agreement, and neither party questions the correctness of that ruling. Hawker testified at trial, and he argues on appeal, that MacDonald's breach caused him damages in two respects: (1) the loss of his share of the anticipated profits from a sale of realty which was frustrated by the securing of an attachment against that realty and a filing of a memorandum of lis pendens pursuant to the commencement of the McGlone action; and (2) the legal expenses he had incurred in defending against that action. The only evidence in support of each of those claims was Hawker's testimony.[8] The judge found and ruled that he was "not

---

[8] Hawker did attempt to introduce his legal bills and vouchers in evidence on the second aspect of his counterclaim, but the judge would not accept them. Hawker made no objection to or argument against the ex-

satisfied that Hawker has carried his burden in connection with the damages which he has suffered and on which his counterclaim is based by reason of MacDonald's brief appearance in the McGlone matter."

Hawker reasons that, because his testimony was uncontradicted and because there are no detailed findings of fact from which we can ascertain whether the judge determined that his testimony was unbelievable or insufficient, he is entitled to a judgment awarding him damages in the amount claimed. We need not consider this contention because even if the judge accepted Hawker's testimony in its entirety, the evidence of actual damage was too speculative and uncertain. Damages may be awarded only "so far as loss can be ascertained to have followed as a natural consequence . . . of the breach . . . [T]he complaining party must establish his claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis." *John Hetherington & Sons* v. *William Firth Co.*, 210 Mass. 8, 21-22 (1911). See *Leavitt* v. *Fiberloid Co.*, 196 Mass. 440, 446 (1907); *White Spot Constr. Corp.* v. *Jet Spray Cooler, Inc.*, 344 Mass. 632, 635 (1962).

We apply this principle first to Hawker's loss of anticipated profits. His testimony on this point is ambiguous and somewhat contradictory. As we piece it together, we understand his theory to be as follows. Included in the property subject to the McGlone attachment and memorandum of lis pendens were two lots in which Hawker had an interest through another of his business ventures, the Chittenden Corporation (Chittenden), subject to a mortgage. Hawker testified that the mortgagee threatened to foreclose on the mortage and that "as a result," Chittenden sold the lots to the mortgagee for the amount of the unpaid balance of the mortgage. Hawker had anticipated that those lots would

---

clusion in the trial court, nor did he request that the documents be marked for identification. More important, he does not argue the propriety of that exclusion before us.

be sold at a profit, his share of which would have been $6,000. Even if the judge had generously inferred from that testimony that the mortgagee's threats and Chittenden's sales to it "would not have occurred but for" the attachment and the memorandum of lis pendens (see *Taylor* v. *International Indus., Inc.*, 8 Mass. App. Ct. 865, 868 [1979], quoting from Restatement [Second] of Contracts § 361, Comment e, and citing Illustration 15 [Tent. Draft No. 14, 1979], *Genesco, Inc.* v. *Koufman, post* 986, 989 [1981]), Hawker's only testimony as to lost profits ("anticipated profits were about $7,500 per house, which I would have received 40 percent") amounted to no more than "conjecture, surmise, or hypothesis." *John Hetherington & Sons* v. *William Firth Co.*, 210 Mass. at 22. See also *H.D. Watts Co.* v. *American Bond & Mortgage Co.*, 267 Mass. 541, 553-555 (1929); *Abrams* v. *Reynolds Metals Co.*, 340 Mass. 704, 708-709 (1960). Viewing the judge's finding and ruling as we have, we see no error.

Hawker's testimony as to the legal expenses he had incurred was simply as to their total amount, which he deemed to be fair and reasonable. That evidence cannot be viewed as a sufficient basis for a determination that those expenses were fair and reasonable, see *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933); *First Natl. Bank* v. *Brink*, 372 Mass. 257, 265-268 (1977), and we again see no error in the judge's finding and ruling as it relates to the second aspect of Hawker's counterclaim.

The judge was correct in refusing to award Hawker damages and in dismissing the counterclaim. *Snelling & Snelling of Mass., Inc.* v. *Wall*, 345 Mass. 634, 635-636 (1963).

3. *Conclusion.* The judgment as to MacDonald's complaint against Hawker is reversed, the dismissal of Hawker's counterclaim is affirmed, and the matter is remanded to the Superior Court for the entry of a new judgment consistent with this opinion. Neither party is to have the costs of this appeal.

*So ordered.*