ANN CABRAL'S CASE
(and a companion case).

Suffolk. December 16, 1983. — May 23, 1984.

Present: ARMSTRONG, SMITH, & WARNER, JJ.

*Workmen's Compensation Act,* Exhaustion of administrative remedies, Agreement as to compensation, Conference procedure. *Practice, Civil,* Contempt. *Contempt.*

Although, in the circumstances, a contempt order against a workers' compensation insurer was interlocutory and not presently appealable, this court, in view of the insurer's underlying contention, exercised its discretion to hear an appeal from the order. [143-144]

A single member of the Industrial Accident Board had authority, under the conference procedure provided by G. L. c. 152, § 7, to effect an increase in the workers' compensation benefits payable to an employee under an agreement concluded pursuant to G. L. c. 152, § 6, and, on the insurer's failure to pay the increased benefits, a judge in the Superior Court appropriately made an enforcement order under G. L. c. 152, § 11. [144-147]

An agreement for workers' compensation concluded under G. L. c. 152, § 6, was enforceable only in accordance with a conference order of a single member of the Industrial Accident Board effecting an increase in the amount of compensation payable, notwithstanding an endorsement on behalf of the division of industrial accidents postdating the conference order and purporting to approve the agreement in its original form. [147-148]

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *Abrams, J.,* and a complaint for contempt was heard by *Mulligan, J.*

CIVIL ACTION commenced in the Superior Court Department on November 29, 1982.

The case was heard by *Mulligan, J.*

*John E. Coyne* (*Deborah A. Marshall* with him) for the insurer.

*Steven Babitsky* for the employee.

ARMSTRONG, J. Resolution of questions of procedure and jurisdiction presented by these cases necessitates recitation of the procedural history but not the facts relating to the underlying claim.

The employee was injured August 17, 1981, and was paid compensation by agreement from August 19. The weekly compensation under the agreement was $76.50, based on an average weekly wage of $114.75. At the time the payments were made, the agreement, dated November 30, 1981, had not been approved by the Division of Industrial Accidents (division) under G. L. c. 152, § 6, as amended by St. 1953, c. 314, § 6.

On August 20, 1982, the employee caused the case to come before a single member of the Industrial Accident Board (board) under the conference procedure of G. L. c. 152, § 7, as amended by St. 1980, c. 283. The single member, on August 26, ordered compensation at the rate of $200 per week, based on an average weekly wage of $300 per week, from August 17, 1981, to May 1, 1982, with a credit to the insurer for any payments previously made. Because the insurer did not pay the additional benefits called for by the order, the employee sought and obtained an enforcement order from the Superior Court under G. L. c. 152, § 11, as amended through St. 1978, c. 478, § 80. The court order was issued November 4, 1982.

The insurer refused to make the additional payments called for by the court order, taking the position that the single member of the board who conducted the conference was without jurisdiction to alter the insurer's obligation as defined in the agreement. On October 25, 1982, the insurer obtained the division's approval of the agreement[1] and on November 29 filed a certified copy of the approved agreement in court and, by its own com-

---

[1] The record suggests that the approval was not the product of deliberation by the board. Unlike the single member's conference order, which was tailored to the particular case and signed by the single member, the division's approval appears to have been affixed by a rubber stamp with a movable date and a facsimile signature of the division's secretary. The statutory mandate that an agreement not receive approval unless it complies with the provisions of the Workers' Compensation Act finds expression in the words of the rubber stamp, "Approved subject to the provisions of the W.C.A."

plaint, sought "enforcement" of the agreement under § 11. On December 7, the employee filed a complaint for contempt in the original action.

The employee's contempt complaint and the insurer's separate enforcement action were heard together on December 13 before a different judge, who entered a contempt order in the employee's action (for the insurer's failure to comply with the order of November 4) and ordered the insurer's action dismissed because "[the order] of November 4, 1982, in [the employee's action] is dispositive of the issue before the court in this case."[2] The cases came before this court on the insurer's appeals in both actions.

There is reason to doubt that the appeal from the contempt order is properly before us at this time. The record does not affirmatively indicate that proceedings before the board were concluded with the conference order; and *Assuncao's Case,* 372 Mass. 6, 8 (1977), states that normally an appellate court "will not decide a workmen's compensation case on the merits unless the record demonstrates that the parties have exhausted their available administrative remedies." If the insurer has timely sought redetermination by a single member under the formal hearing procedure (G. L. c. 152, § 7, fifth sentence), proceedings before the division remain interlocutory. Where a civil contempt order is entered in aid of ongoing proceedings, the contempt order, as we read *Borman* v. *Borman,* 378 Mass. 775, 783 (1979),[3] and *Commonwealth* v. *Winer,* 380 Mass. 934, 935 (1980), is regarded as interlocutory and not presently

---

[2] A judgment was never entered. The judge's memorandum of decision stated that, for the reason given in the text, "[t]his court declines to enter a separate judgment." The insurer's appeal is from that decision. We construe the memorandum of decision as, in effect, an order for a judgment of dismissal. We may consider the issues raised by the appeal, despite the absence of a judgment, for the reasons stated in *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket,* 5 Mass. App. Ct. 206, 207-208 (1977).

[3] The *Borman* case quotes *Cogen* v. *United States,* 278 U.S. 221, 223-224 (1929), to the effect that "[i]t is only when disobedience happens to result in an order punishing *criminally* for contempt, that a party may have review by appellate proceedings before entry of the final judgment in the cause" (emphasis supplied).

appealable, at least in the absence of an order of commitment.[4] Here we have no order of commitment; and although the order calls for a penalty, implicitly payable to the Commonwealth, of $200 for each day of noncompliance, that penalty does not cause the contempt order to be criminal in nature. *Labor Relations Commn.* v. *Fall River Educators' Assn.,* 382 Mass. 465, 474-478 (1981). Because the insurer's contention goes, in its view, to the jurisdiction of both the board and the court; because its contention is not frivolous; and because the underlying cases seem destined to generate even more procedural complexity if the insurer's contention is not now resolved, we dispel our doubts about the present appealability of the contempt order by exercising our discretion to allow the appeal to be heard at this time. Compare *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 470 (1975); *Haufler* v. *Commonwealth,* 372 Mass. 527, 528 (1977).

The insurer's underlying contention is that a single member acting under the conference procedure of § 7 is without authority to enter an order in conflict with the terms of an agreement for compensation falling within the purview of § 6. It relies particularly on *Kareske's Case,* 250 Mass. 220 (1924), and *Perkins's Case,* 278 Mass. 294 (1932), for the finality of agreements for compensation approved by the division under § 6 and for the proposition that such an agreement may only be undone, not by the board, but by a court, and then only on a showing of fraud or mutual mistake. See also *O'Reilly's Case,* 258 Mass. 205, 209 (1927), and *Hansen's Case,* 350 Mass. 178, 180 (1966).

The case last cited indicates that approved agreements for compensation are still governed in general by the concepts set out in *Perkins's Case*; but in 1945 (see St. 1945, c. 347), § 6 of G. L. c. 152 was amended to avoid the effect of the *Perkins* line of cases in one particular. The amendment added a proviso that "the [division] or a member thereof" could "change [the] average weekly wages" specified in an approved agreement

---

[4] "It is only where 'the witness chooses to disobey and is committed for contempt' that 'the witness' situation becomes so severed from the main proceeding as to permit an appeal.'" *Commonwealth* v. *Winer,* 380 Mass. at 935, quoting from *Cobbledick* v. *United States,* 309 U.S. 323, 328 (1940).

"if the facts found so warrant." That, of course, is what the single member in effect did here; but, according to the insurer, the member lacked authority to do so because he was acting in accordance with the conference procedure of § 7, and § 7 had no application because the case involved neither of the two situations which are said by § 7 to give rise to proceedings thereunder.[5] The insurer finds support in *Levangie's Case,* 228 Mass. 213, 217 (1917), for the proposition that the asserted deviation from the procedural requirements of the Workers' Compensation Act deprived the single member of jurisdiction to enter an effective order. To the same effect, see *Hansen's Case,* 350 Mass. at 180.

The legislative history of §§ 6 and 7 convinces us, however, that the conference procedure set out in § 7 is not, as the insurer asserts, inapplicable to petitions under § 6 to change the average weekly wages in an agreement. Section 6 does not specify any procedure which is to be followed in determining whether "the facts . . . warrant" a change in average weekly wages. It merely indicates, in general fashion, that the change may be ordered "by the division or a single member thereof." Implicit is an incorporation of the procedures set out in §§ 7, 8, and 10. The implication was obscured by amendments made to § 7 in 1971 and 1972 but emerges clearly from the versions of the sections in effect prior thereto.

Until 1945, §§ 6 and 7 contemplated hearings only in the situations described by the latter: § 6 covered agreements, and § 7 covered disagreements.[6] The hearing procedure before the

---

[5] Those situations are: (1) "[i]f the insurer and the injured employee fail to reach an agreement in regard to compensation," and (2) "if they have reached such an agreement, which has been signed and filed in accordance with this chapter, and compensation has been paid or is due in accordance therewith, and the parties thereto then disagree as to the continuance of any weekly payments . . . under such agreement." G. L. c. 152, § 7.

[6] In the Tercentenary Edition of the General Laws, §§ 6 and 7 read as follows:

"SECTION 6. If the insurer and the injured employee reach an agreement in regard to compensation, a memorandum thereof shall be filed with the department, and, if approved by it, the memorandum shall for all purposes

single member was governed by § 8, which began (as it still does), "Such member shall . . .," referring to the member assigned to hear the case under § 7. When, in 1945, § 6 was amended to allow a party to an agreement to petition for a change in the average weekly wages specified therein (St. 1945, c. 347), there can be no doubt that a member would be assigned under § 7 to hear the petition in accordance with the procedures set out in § 8. No other method of proceeding was available.

In 1971 and 1972 amendments were made to §§ 7 and 11 to provide an informal conference procedure prior to the formal § 8 hearing procedure and to provide for the enforceability under § 11 of the single members' orders under both the informal and formal procedures.[7] The conference procedure amendment could have been placed in § 8, which governed the formal hearing procedure, but was doubtless placed in § 7 because the conference procedure was to precede the designation under § 7 of a single member to conduct the formal hearing under

---

be enforceable under section eleven. Such agreements shall be approved by said department only when the terms conform to this chapter."

"SECTION 7. If the insurer and the injured employee fail to reach an agreement in regard to compensation, or if they have reached such an agreement, which has been signed and filed in accordance with this chapter, and compensation has been paid or is due in accordance therewith, and the parties thereto then disagree as to the continuance of any weekly payments under such agreement, either party may notify the department, which shall thereupon assign the case for hearing by a member thereof."

The references to "department" were changed to "division" by § 6 of St. 1953, c. 314, under which the Department of Industrial Accidents became an autonomous division within the Department of Labor and Industries.

[7] The relevant statutes are St. 1971, c. 974, and St. 1972, c. 742. In 1971 Ann. Survey of Mass. Law § 4.4, Mr. Laurence Locke explains that the statutes were a legislative response to a severe problem of delay in the industrial accident hearing system, a delay caused by understaffing and exacerbated by incentives to pursue all avenues of administrative and judicial review (orders for payments or reductions in payments not being enforceable until final). The informal conference procedure introduced in 1971 was intended to produce an initial determination of a claim more speedily than the relatively cumbersome formal hearing procedure, and the direct enforceability of single members' orders under § 11, despite the fact that administrative appeals were unexhausted, was intended both to give a claimant earlier relief and to eliminate purely dilatory appeals.

§ 8. Under the revision, the introductory words of § 8 ("Such member shall . . .") can only refer to the member designated under the fifth sentence of § 7[8] to conduct a formal hearing where one of the parties is aggrieved by the order entered under the conference procedure.

The three-tier procedure set out in §§ 7 (conference), 8 (formal hearing), and 10 (reviewing board) is the only procedure set out for deciding disputed claims for compensation (or for reduction or termination thereof). A dispute following an agreement under § 6 is implicitly to be decided in accordance with that procedure. Nothing in the 1971 and 1972 amendments suggests an intention to set up a different, anomalous procedure to resolve such disputes, and the words of §§ 6 and 7 do not compel such a result. It follows that the single member who entered the order after the conference was acting within the jurisdiction conferred by the act; that the order entered in the Superior Court on November 4, 1982, directing compliance with the conference order was authorized under § 11; and that the contempt order entered December 30, 1982, was not in error insofar as it adjudged the insurer in contempt for its failure to comply with the court's November 4 order. The order must be amended only to remove the references to one Radley, the president of the insurer, who was not named as a party in the complaint for contempt. See *Crystal, petitioner,* 330 Mass. 583, 587-589 (1953); *Meranto* v. *Meranto,* 366 Mass. 720, 724 (1975); *Mills* v. *Mills,* 4 Mass. App. Ct. 273, 278 (1976).[9]

By its separate action under § 11 to "enforce" the approved agreement, the insurer sought only to preclude enforcement of

---

[8] The fifth sentence reads: "Any party aggrieved by an order filed under this section [i.e., under the conference procedure] may within ten days from the filing of such an order request the division to set the case for a hearing before another member thereof."

[9] The cases relied on by the judge in holding the officer personally in contempt — *Milano* v. *Hingham Sportswear Co.,* 366 Mass. 376, 378 (1974), and *Parker* v. *United States,* 126 F.2d 370 (1st Cir. 1942) — stand for the proposition that a corporate officer may be held in contempt of an order directed against the corporation but not for the proposition that he may be held in contempt without being named and served as a party and notified of the contempt charge against him.

the single member's conference order. The order of the single member postdated the agreement and, in accordance with the provisions of § 6, had the effect of changing the terms of the agreement relative to average weekly wages. If the agreement was thereafter enforceable at all, it was enforceable only in accordance with the changes ordered by the single member, until such time as the insurer should succeed in obtaining reversal of the single member's order in accordance with the review procedures of §§ 8, 10 and 11. Any other reading would enable a party, by belatedly presenting an agreement for approval, to nullify unilaterally any changes ordered by a single member in accordance with the authority granted in §§ 6 and 7. Compare *Ferreira* v. *Arrow Mut. Liab. Co.,* 15 Mass. App. Ct. 633, 637 (1983).

A judgment shall be entered in the insurer's action dismissing that action. The order in the employee's contempt action is to be amended to delete the portions applicable to Radley and, as so amended, is affirmed.

*So ordered.*