ARCH MEDICAL ASSOCIATES, INC., & another[1] *vs.*
BARTLETT HEALTH ENTERPRISES, INC., & others.[2]

No. 90-P-772.

Norfolk. December 18, 1990. - April 15, 1992.

Present: WARNER, C.J., ARMSTRONG, & LAURENCE, JJ.

*Contempt. Practice, Civil*, Contempt, Appeal, Record, Attorney's fees.
*Damages*, Attorney's fees, Contempt.

No error with respect to a claim of denial of due process was disclosed by
the record on appeal from an award of damages for contempt of a pre-
liminary injunction. [406]
In a civil contempt action, the record supported the judge's award of $250
per day for past violations of a preliminary injunction and $500 per day
for future violations from the date of the hearing on the complaint.
[406-408]
An award of counsel fees in a civil contempt action was vacated and re-
manded for reconsideration to determine what amount of counsel fees
was actually attributable as a loss arising out of the disobedience of the
injunctive order in the underlying case. [408-409]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 18, 1985.

A proceeding for contempt was heard by *Barbara A.
Dortch*, J.

*Paul X. Tobin* (*Charles M. Tobin* with him) for the
defendants.

*Philip R. Berwish* for the plaintiffs.

ARMSTRONG, J. The defendants were found to be in con-
tempt of a preliminary injunction against operating a "Nu-
tri/System" outlet at a particular address in Norwell, the
problem being, according to the plaintiffs, who operate a Nu-
tri/System weight loss center in Braintree, that the Norwell

---

[1] Robert J. Kolson.
[2] Mark Bartlett and Patricia Bartlett.

location is situated within a ten-mile exclusive franchise zone granted them in their contract with Nutri/System, Inc., the franchisor. The injunction took effect June 7, 1989, when the plaintiffs posted a required bond and the defendants were served with copies by a deputy sheriff. On June 14, 1989, a judge of the Superior Court other than the one who had granted the injunction ordered it stayed pending review by a single justice of this court. The latter denied relief, the denial being entered on the Superior Court docket August 24, 1989. The plaintiffs then filed a complaint for contempt of the injunction, alleging, apparently (neither the principal complaint nor the contempt complaint has been included in the appendix), that the defendants continued to do business from the Norwell location.

There was a hearing on the contempt complaint on October 3, 1989, at which the defendants acknowledged their violation, according to the judge's findings. From affidavits the individual defendants filed at the hearing, we gather that their position was that the presence of their Norwell Nutri/System outlet impinged little on the plaintiffs' actual market, which continued to grow despite the defendants' Norwell facility, and that the closing of their Norwell location would leave an opening for market penetration by a major Nutri/System competitor, "Jenny Craig." The judge entered findings and a judgment of contempt, imposing damages of $250 per day, for fifty days, that being the time (according to the judge's calculation) that the injunction had been in effect up to the date of the hearing on October 3, and $500 per day for each day thereafter that the defendants should remain in violation. She also awarded attorneys' fees and costs of $16,069.02, as outlined in an affidavit furnished by the plaintiffs' counsel.[3]

---

[3]The very limited record that the defendants have furnished to this court does not show that the underlying action in the Superior Court has been concluded. There is doubt whether a civil contempt order in an ongoing action is a presently appealable order, at least in the absence of an order of commitment. See *Cabral's Case*, 18 Mass. App. Ct. 141, 143-144 (1984). This court has discretion to entertain an appeal, however, even if it is not one that is here of right. *Id.* at 144. We elect to entertain the appeal in

The defendants raise two points in their appeal: first, that they were denied due process in that the judge predicated her award of damages on an affidavit furnished by the plaintiffs' counsel after the October 3 hearing, without giving the defendants an opportunity for a hearing on the issue of damages; second, that the damages amounts were not reasonably attributable to the defendants' violation of the injunction (i.e., their continued operation of the Norwell facility). Here the defendants apparently allude to certain materials included in their appendix (although not shown to have been before the judge) indicating that during the summer of 1989 Jenny Craig was making inroads in the South Shore market, and that Boston-area Nutri/System franchises had been set back by a two-part special on Boston's highest-viewership television channel casting doubt upon Nutri/System's weight-loss claims.

The difficulty we have in evaluating both of these contentions is that we have absolutely no idea what transpired at the October 3 hearing on the contempt complaint. No transcript of the hearing has been furnished, and the defendants have not availed themselves of any alternative method of reconstructing the evidentiary record (see Mass. R.A.P. 8[c] and [d], 378 Mass. 932, 933-934 [1979]). Without a record of the testimony or representations at the hearing, we have no basis for concluding that the evidence did not support the judge's findings of damages. *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 689 (1978). The burden is on the appellant in the first instance to furnish a record that supports his claims on appeal. *Id.* Errors that are not disclosed by the record afford no basis for reversal.

We can only look at what we are given: this is the judge's findings and three affidavits, two furnished by the defendants the day of the trial, the other furnished by the plaintiffs'

this case because the contempt order under review will, in all likelihood, conclude the case, making trial on the merits moot. Dismissal of the appeal would serve no purpose and might require the parties to return to reargue issues already briefed and argued.

counsel a week later.[4] The judge's findings indicate that the Norwell facility was serving 141 clients and that the plaintiffs' Braintree facility, with 476 clients the previous year and gross revenues of $562,576, was deriving gross revenue of $1,182 per client per year. Extrapolating, she inferred the 141 clients of the Norwell facility would, if they were customers at Braintree, augment the plaintiffs' annual gross by $166,662. This is *gross*, the defendants argue; compensatory damages must be based on lost profits, which would take account of expenses, as to which the findings are silent. But additional customers, in an up-and-running facility, may represent largely profit; the judge may well have had a basis in the evidence at the October 3 hearing for assuming that 141 additional customers would not necessitate significant additional expense. In any event, the figure the judge employed in calculating the compensatory damages was $250 per day; it was plainly far less than the additional daily gross that 141 additional customers would provide ($166,662 $\div$ 365 = $457) on the assumptions indicated. On its face the figure of $250 seems conservative.

There is no fatal inconsistency between the judge's award of $250 per day for past violations and $500 per day for future violations. Lost profits are notoriously difficult to prove with precision, see *Frank D. Wayne Assocs., Inc.* v. *Lussier,* 16 Mass. App. Ct. 986, 988 (1983), and a judge may rationally employ conservative principles in estimating damages for past violations, where the purpose is entirely compensatory, but employ more expansive principles in assessing a periodic fine for ongoing violations, where the purpose is less compensatory and more coercive, to compel obedience to the injunction. Especially in civil contempts where the fine is prospec-

---

[4] The affidavit of the plaintiffs' counsel could be the source of the figures in the judge's findings relative to gross-per-client at the plaintiffs' Braintree facility, but we have no way of knowing whether those figures were independently supported by evidence at the October 3 hearing, nor do we know that the defendants had no opportunity to rebut the affidavit. It should be noted that at least one of the figures used by the judge in her findings (that concerning the number of clients served by the Norwell facility) comes from the affidavits furnished by the defendants.

tive in its operation, it can properly be "measured only 'in some degree' by the pecuniary harm caused by the contemptuous act." *Allen* v. *School Comm. of Boston,* 400 Mass. 193, 195 (1987), quoting from *Department of Pub. Health* v. *Cumberland Cattle Co.,* 361 Mass. 817, 832 (1972). In an ordinary contract action, tenuous proofs of lost profits often run afoul of the principle that "the complaining party must establish his claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis." *John Hetherington & Sons* v. *William Firth Co.,* 210 Mass. 8, 21-22 (1911). *MacDonald* v. *Hawker,* 11 Mass. App. Ct. 869, 877 (1981). Different principles come to the fore in contempt actions, where "[t]he amount of a compensatory fine upon '[o]ne who has disobeyed a decree' need not be measured with undue precision." *Department of Pub. Health* v. *Cumberland Cattle Co., supra* at 832, quoting from *Godard* v. *Babson-Dow Mfg. Co.,* 319 Mass. 345, 350 (1946).

The large daily fine was ordered by the judge to take effect not from the date of the contempt judgment but from the date of the hearing, October 3. At that time the defendants stood before the court in open violation of the court's order. They were, or should have been, then on notice that the court could not treat ongoing violations with lofty indifference. In this situation a fine based on strictly compensatory principles, conservatively calculated, could be viewed " 'as nothing more than an acceptable cost of violation rather than as a deterrence to violation.' " *Commonwealth* v. *Fall River Motor Sales, Inc.,* 409 Mass. 302, 313 (1991), quoting from *United States* v. *ITT Continental Baking Co.,* 420 U.S. 223, 231 (1975). There was no error or abuse of discretion in finding the amount of the coercive daily fine or in ordering it to apply from the date of the hearing.

The defendants also contend that the judge erred in her award of counsel fees to the plaintiffs. The principal contention here is that a major portion of the hours spent in July and August, 1989, appear, from the descriptions of the work appearing in the plaintiffs' counsel's affidavit, to have been

directed to removing the stay of the preliminary injunction that was ordered by the second Superior Court judge and to defending the injunction in the proceedings before the single justice of this court. The award of counsel fees is authorized in civil contempt cases as "fair compensation for losses suffered because of disobedience of the court's order." *Darmetko* v. *Boston Hous. Authy.*, 378 Mass. 758, 763 n.7 (1979). The hours expended in obtaining and defending the injunctive order cannot be regarded as arising out of the disobedience of the order. The hours expended in attempting to remove the stay and in defending the injunction in the Appeals Court should be excised from the total hours spent to calculate the award of counsel fees. The affidavit by the plaintiffs' counsel, upon which the award was based, does not permit us to do this calculation. The judge should require either a hearing on the question of counsel fees or the submission of an affidavit showing the division of time between efforts to preserve the injunction and efforts to compel compliance. This part of the judgment must be reconsidered.[5]

Part (a) of the judgment, relating to attorneys' fees and costs, is vacated, and the matter is remanded to the Superior Court for reconsideration. The judgment is otherwise affirmed.

*So ordered.* ·

---

[5]During the pendency of this appeal, the plaintiffs' counsel advised the court of the return of a jury verdict in favor of the plaintiffs against Nutri/System, Inc., in a pending Federal District Court action, Arch Medical Associates, Inc. *vs.* Nutri/System, Inc., No. 88-2483-Y (D. Mass.). Still pending, apparently, is a G. L. c. 93A claim. Although the jury verdict in the Federal action may represent the plaintiffs' damages resulting from the defendants' operation of the Norwell facility, without seeing the pleadings and the jury instructions in the Federal action we are in no position to compare the damages awards in that action and this. To whatever extent it might be thought relevant, such questions should be addressed in the first instance to the trial court. It goes without saying that different fact finders measuring the same damages against different obligors on different evidentiary records in actions involving different parties may validly reach inconsistent results, leaving the plaintiffs free to collect, if they can, on the larger of the awards. See, e.g., *Sprague* v. *Oakes*, 19 Pick. 455, 458 (1837).