DUVAL vs. DUVAL, 101 Mass. App. Ct. 752

 
 CANDACE M. DUVAL vs. SHANE A. DUVAL.

101 Mass. App. Ct. 752
 April 5, 2022 - September 23, 2022

Court Below: Probate and Family Court, Worcester Division
Present: Meade, Englander, & Grant, JJ.

 

No. 21-P-94.

Divorce and Separation, Modification of judgment, Alimony, Child support, Separation agreement. Parent and Child, Child Support. Practice, Civil, Waiver.

A Probate and Family Court judge, in modifying the husband's unallocated support obligation in a judgment of divorce, erred in concluding that the obligation was in the nature of alimony, rather than a hybrid of both alimony and child support, where the separation agreement that had been incorporated into the divorce judgment unambiguously reflected the parties' intent for unallocated support to be a hybrid family support obligation incorporating both the wife's and the children's needs for support, in that the context in which the term "unallocated support" was presented in the agreement (surrounded by references to the child support statute and other matters related to child support) signaled such intent, in that the parties would have included the wife's remarriage as a mandatory termination event (consistent with the Alimony Reform Act) had they intended unallocated support to be purely alimony, and in that the agreement contained no express waiver of child support; accordingly, this court vacated so much of the modification judgment as pertained to unallocated support and remanded the matter for a redetermination of the support obligation in light of all relevant and material changed circumstances. [756-762]

Discussion of issues likely to arise on remand of a complaint requesting modification of an unallocated support order in a divorce judgment, including consideration of the husband's dividend income in connection with the support of the children [762-764] and the appropriate criteria for modification of alimony and support, including the needs of the wife and the children [764].

This court vacated and remanded for redetermination a provision of a modification judgment of divorce, where the basis for the judge's decision could not be discerned from his findings or the record. [765]

Complaint for divorce filed in the Worcester Division of the Probate and Family Court Department on December 23, 2015.

 A complaint for modification, filed on April 9, 2018, was heard by Paul M. Sushchyk, J.

 Nicholas J. Plante for the husband.

 Sean J. Gallagher for the wife.

 Page 753 

 MEADE, J. In 2017, Shane A. Duval (husband) and Candace M. Duval (wife) executed a separation agreement providing that the wife would have primary physical custody of the parties' two children, the husband would pay unallocated support of $850 per week, and the parties would contribute to the children's future college expenses "to the extent that each is able." In 2018, the husband filed a complaint for modification, seeking a reduction in his unallocated support obligation based on the wife's increased income and his increased parenting time (the elder child was living primarily with him, and the younger child was spending equal time in each party's home). A trial was held in June 2019, by which time the eldest child was attending college. In August 2019, a judgment of modification (modification judgment) entered. The judge, treating the husband's unallocated support obligation as alimony (and thus unaffected by the changes relating to the children), reduced the husband's weekly payments to $648 based on the wife's increased income only, and ordered both parties to contribute to the children's college expenses prospectively (while declining to order the wife to reimburse the husband for the first year of college expenses that he had already paid). The parties cross-appealed. 

 We conclude that it was error to treat the unallocated support order as purely alimony rather than a hybrid of alimony and child support. Because this error affected the judge's analysis relating to unallocated support and college contribution, we vacate so much of the modification judgment as pertains to unallocated support and college expenses and remand the case for further proceedings consistent with this opinion. 

 Background. The parties were married on December 26, 1998. In December 2015, the wife filed a complaint for divorce, which was served on the husband on January 5, 2016. At that time, the wife was earning minimal income as a substitute teacher, while the husband was the primary income earner, receiving a weekly salary and dividend income from his business, Brighter Horizons Environmental Corporation (BHE), a closely held corporation that he founded with his business partner in 2005. 

 On May 19, 2017, the parties executed a separation agreement containing six exhibits, three of which -- exhibits B, C, and D -- are relevant here. Exhibit B divided the parties' personal property, including the fair market value of the husband's fifty percent shareholder interest in BHE. The parties agreed that the husband would retain his interest in BHE and would execute a promissory 

 Page 754 

note requiring him to make a series of payments to the wife totaling $287,569, to equalize the property division. Exhibit C provided that the wife would have primary physical custody of the parties' two children. Exhibit D provided that the husband would pay "unallocated support" to the wife of $850 per week, until the earliest to occur of the death of the husband, the death of the wife, or January 1, 2031. The term "unallocated support" was not defined in the agreement. Exhibit D further provided that the parties would contribute to the cost of the children's college education "to the extent that each is able." The agreement was incorporated into the divorce judgment; exhibit B survived and retained independent legal significance, whereas exhibits C and D were merged with the divorce judgment and did not survive. See DeCristofaro v. DeCristofaro, 24 Mass. App. Ct. 231, 235 (1987).

 Soon after the divorce, in December 2017, the parties' elder child (who was about to turn eighteen and entering his final semester of high school) began residing primarily with the husband. In April 2018, the husband filed a complaint for modification seeking (1) joint physical custody of the parties' younger child; and (2) termination, reduction, or recalculation of his unallocated support obligation based on the elder child residing with him full time, the wife's increased income, and any change to the custody arrangement for the younger child resulting from the modification action. The wife filed an answer and counterclaim in October 2018, seeking an order establishing an appropriate amount of child support to be paid by the husband. In 2019, the parties executed a partial agreement for judgment, which was incorporated into the modification judgment, agreeing to a parenting plan for the younger child under which each parent would have approximately equal parenting time, but the wife's home would remain the child's primary residence. [Note 1] By that point, the parties' elder child had already completed his first year of college and was residing primarily with the husband when not at school. The total out-of-pocket cost for his first year of college was $9,051, which the husband paid without contribution from the wife. The parties agreed to submit to the judge for resolution the disputed issues of (1) the amount and character of support to be paid by the husband, and (2) the parties' respective contributions to the children's college expenses. 

 Page 755 

 Following a trial, the judge issued the modification judgment and findings in August 2019, reducing the husband's unallocated support obligation to $648 per week, and ordering the husband to pay one-third, and the wife to pay one-sixth, of the children's future college expenses. [Note 2] The judge declined to order the wife to contribute to the elder child's first year of college expenses. 

 The judge made the following relevant rulings and findings. With respect to the husband's unallocated support obligation, the judge interpreted exhibit D of the separation agreement as evidencing the parties' intent for unallocated support to be in the nature of alimony, rather than a hybrid of alimony and child support. Because the judge concluded that the husband's unallocated support obligation was purely alimony, he found that the husband's increased parenting time and financial responsibility for the children did not constitute a material change in circumstances warranting modification of the unallocated support order. [Note 3] 

 Instead, the judge applied alimony principles and determined that modification was warranted in light of the increase in the wife's income since the divorce. The judge found that the wife's gross weekly income (excluding unallocated support) had increased from $140.34 at the time of divorce, to $1,228.95 at the time of the modification trial, representing a material change in circumstances. [Note 4] By contrast, the judge found no material change in the husband's financial circumstances since the divorce, with his gross weekly income from BHE totaling $4,813.75 ($2,500 salary and $2,313.75 dividend income) at the time of the divorce, 

 Page 756 

and $4,636 ($2,500 salary and $2,136 dividend income) at the time of the modification trial. [Note 5] 

 The judge found that the husband had the ability to pay alimony while also maintaining the former "upper-middle class" marital lifestyle, whereas the wife -- notwithstanding her increased income -- remained in need of support to maintain the former marital lifestyle. Although the wife's financial statement revealed a weekly deficit of $1,172.18 after deducting her claimed expenses from her earned income, the judge did not address the wife's asserted need in his findings. [Note 6] Instead, he found that "the parties agreed, in the [s]eparation [a]greement, that [the wife's] need for support was equal to 18.54% of the difference in the parties' respective incomes," because the original agreed upon amount of unallocated support ($850 per week) was mathematically equivalent to 18.54 percent of the difference in the parties' incomes at the time of the divorce. The judge arrived at this conclusion despite the fact that the agreement neither contained that percentage figure nor provided a calculation method for the $850 per week unallocated support order. The judge ultimately reduced the husband's unallocated support obligation to $648 per week, representing the 18.54 percent delta between the parties' incomes at the time of the modification trial. In calculating this amount, the judge considered both the husband's salary and dividend income from BHE. The present cross appeals followed.

 Discussion. On appeal, both parties challenge the modified unallocated support order. The husband also challenges the college expense provision of the modification judgment. We address each issue in turn. 

 1. Unallocated support. a. Parties' intent. As a threshold matter, we must determine whether the judge, in interpreting the separation agreement, correctly concluded that the parties intended the unallocated support order to be in the nature of alimony, rather than a hybrid of both alimony and child support. 

 Page 757 

Here, the judge found that the

"[s]eparation [a]greement contained no provision for child support. The unallocated support for which the [s]eparation [a]greement did provide is in the nature of alimony. It expressly provides for a series of termination events that are unrelated to the children. . . . The termination events recited in the parties' [s]eparation [a]greement are directly related to those provided in the alimony statute, namely the death of either party or a date certain which relates to the durational limits of G. L. c. 208, § 49. Essentially, the [s]eparation [a]greement provided for [the wife] to receive her division of property and alimony, termed unallocated support, in the amount and duration that she did in exchange for not receiving child support." (Footnote omitted.) [Note 7] 

The judge further found that "[a]lthough the issues related to the children were considered in setting the unallocated support amount, the amount was primarily set based on [the wife's] need for support. Emancipation of the children was not an event which would trigger a change in the amount of support." 

 The wife maintains that the judge correctly interpreted the agreement, whereas the husband asserts that the judge ignored other surrounding language in the agreement that demonstrated the parties' intent for unallocated support to be a hybrid of alimony and child support. The husband accordingly maintains that his support obligation should be further modified to account for the changes in parenting arrangements. For the reasons that follow, we agree with the husband.

 "Where an agreement does not survive, it is nevertheless appropriate for a judge to take heed of the parties' own attempts to negotiate terms mutually acceptable to them. . . . To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties." Huddleston v. Huddleston, 51 Mass. App. Ct. 563, 569-570 (2001), quoting Bercume v. Bercume, 428 Mass. 635, 644 (1999). "The interpretation of the separation agreement is a question of law, and is therefore afforded plenary review" (quotation and citation omitted). Colorio v. Marx, 72 Mass. App. Ct. 382, 386 (2008). We must construe the agreement based on "a 

 Page 758 

fair construction of the contract as a whole and not by special emphasis upon any one part" (citation omitted), Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005), while also recognizing that "every word is to be given force so far as practicable" (citation omitted), MacDonald v. Hawker, 11 Mass. App. Ct. 869, 872-873 (1981). "[W]hen the language of a contract is clear, it alone determines the contract's meaning," Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017), and "[t]he mere existence of the parties' disagreement does not make the language ambiguous," Browning-Ferris Indus., Inc. v. Casella Waste Mgt. of Mass., Inc., 79 Mass. App. Ct. 300, 307 (2011) ("An ambiguity arises from language susceptible of different meanings in the eyes of reasonably intelligent persons"). 

 Exhibit D of the separation agreement, which sets forth the husband's unallocated support obligation, does not contain a definition for unallocated support. The lack of a definition for an essential contract term is not, however, fatal if the meaning of that term can be understood by the surrounding contract language. See General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) ("The words of a contract must be considered in the context of the entire contract rather than in isolation"). We look first to the language of the agreement, as that remains the best evidence of the parties' intent. See Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973). 

 Exhibit D, entitled "UNALLOCATED SUPPORT, COLLEGE, TAX EXEMPTIONS," provides:

"1. [The] [h]usband and the [w]ife each acknowledge that s/he has been made aware of the criteria set forth in [G. L.] c. 208, §§ 48 through 55 governing alimony as well as [G. L.] c. 208[,] § 28 governing child support. With this knowledge, [the] [h]usband and [the] [w]ife agree to the terms of unallocated support set forth in this [e]xhibit D.

"2. . . . Commencing on Friday, September 29, 2017, and each Friday thereafter, [the] [h]usband shall pay directly to [the] [w]ife . . . unallocated support in the amount of $850.

"3. The payment of unallocated support pursuant to this [e]xhibit D shall terminate on the earliest to occur of the following:

 (1) [the] death of the [h]usband;

 Page 759 

 (2) [the] death of the [w]ife; or

 (3) on January 1, 2031.

"4. The amount of unallocated support payments set forth in paragraph 2 of this [e]xhibit D has been determined on the basis of currently prevailing federal and state income tax laws, rules and regulations, with the intention and understanding that all payments made pursuant to said paragraph 2 of this [e]xhibit D qualify as unallocated support payments for income tax purposes as that term is defined in the United States Internal Revenue Code, as amended and in effect at the date this [a]greement is executed. As such, these payments shall be entirely deductible to the [h]usband and taxable to the [w]ife. In the event of a change in the rules, rulings[,] or regulations of the Internal Revenue Service, or in the event of any subsequent statutory amendment or judicial or administrative order or determination, including but not limited to a tax recapture decision by the [Internal Revenue Service], the amounts paid pursuant to the provisions of paragraph 2 of this [e]xhibit D shall be reviewed and adjusted to reflect the intent and understanding expressed in this paragraph regarding the tax consequences to both parties of the unallocated support payments.

"5. College. The [h]usband and [the] [w]ife recognize the desirability of their [m]inor [c]hildren attending college and, to that end, the parties agree that they will contribute to the cost of same to the extent that each is able. . . .

"6. Tax Exemptions. For the calendar and tax year beginning on January 1, 2016 and as to any calendar and tax year thereafter, [the] [h]usband shall be entitled to claim the dependency exemption for the [elder child] under applicable federal and state tax laws and [the] [w]ife shall be entitled to claim the dependency exemption for the [younger child]. . . . When only one (1) [m]inor [c]hild is available as a dependency exemption, the parties shall alternate taking said [c]hild as an exemption . . . ." 

 When reading exhibit D in its entirety, it is evident that the parties intended the husband's unallocated support obligation to encompass support for the entire family. The subject matter of exhibit D does not pertain solely to alimony. To the contrary, the 

 Page 760 

first paragraph of exhibit D explicitly references the child support statute in connection with unallocated support. The first paragraph states that the parties are "aware of the criteria set forth" in both the alimony and child support statutes and, "[w]ith this knowledge," they "agree to the terms of unallocated support set forth in this [e]xhibit D." See Computer Sys. of Am., Inc. v. Western Reserve Life Assur. Co. of Ohio, 19 Mass. App. Ct. 430, 437 (1985) ("every word and phrase of a contract should, if possible, be given meaning, and . . . none should be treated as surplusage if any other construction is rationally possible"). Exhibit D also sets forth provisions relating to the payment of college expenses and tax dependency exemptions -- both of which are interrelated with child support, not alimony. See Child Support Guidelines § II(B), (G), effective Sept. 15, 2017, as amended, June 15, 2018 (guidelines). The context in which the term unallocated support is presented in the separation agreement -- surrounded by references to the child support statute and other child support-related matters -- signals the parties' intent for unallocated support to have a child support component. 

 The judge found the agreed-upon termination events to be dispositive as to the parties' intent because they related solely to alimony. Conspicuously absent, however, from those agreed-upon termination events was any reference to the possibility of the wife's remarriage. Had the parties intended unallocated support to be purely alimony, they would have included the wife's remarriage as a mandatory termination event consistent with the Alimony Reform Act (act). See G. L. c. 208, § 49 (a) ("General term alimony shall terminate upon the remarriage of the recipient or the death of either spouse . . ." [emphasis added]). [Note 8] Moreover, the lack of child-related termination events was necessary to achieve the parties' stated objective of ensuring that the unallocated support payments were tax deductible by the husband (which would not have been possible if unallocated support terminated upon a child-related contingency). See L.J.S. v. J.E.S., 464 Mass. 346, 353 n.5 (2013); Griffith v. Griffith, 24 Mass. App. Ct. 943, 945 n.1 (1987). See also Child Support Guidelines § II(A)(2) & commentary 2017 (recognizing that child support is not tax deductible and recommending unallocated support orders as means of achieving "significant tax benefit" in cases where 

 Page 761 

parties have disparate income levels). [Note 9] 

 We likewise reject the judge's conclusion that the wife agreed to receive alimony in exchange for waiving child support. The agreement contained no express waiver of child support -- nor would such a waiver be appropriate. See Cavanagh v. Cavanagh, 490 Mass. 398, 409 (2022) ("[p]arents may not bargain away the rights of their children to support," because "[t]he Legislature has stated that it is 'the public policy that dependent children shall be maintained as completely as possible from the resources of their parents'" and "such policy 'will take precedence over the freedom of the parties to enter a binding contract' that could potentially jeopardize the children's interests" [quotation and citations omitted]); Quinn v. Quinn, 49 Mass. App. Ct. 144, 146-147 (2000). 

 Our statutes and case law provide additional guidance on meaning, see Balles, 476 Mass. at 575-576, insofar as "unallocated support" is often described as a hybrid support obligation distinguishable from pure alimony. See G. L. c. 208, § 53 (d) ("Nothing in this section shall limit the court's discretion to cast a presumptive child support order under the child support guidelines in terms of unallocated or undifferentiated alimony and child support"); Macri v. Macri, 96 Mass. App. Ct. 362, 367-368 (2019) (referring to "unallocated support" as "encompassing both alimony and child support" and applying modification principles relevant to both alimony and child support); Rosenwasser v. Rosenwasser, 89 Mass. App. Ct. 577, 589 (2016) (trial judge found payment of "unallocated support" to wife no longer appropriate once primary custody of child was transferred to father, and instead ordered father to pay lesser amount, characterized as "pure alimony," to wife).

 Accordingly, we agree with the husband that the separation agreement unambiguously reflected the parties' intent for unallocated support to be a hybrid family support obligation incorporating both the wife's and the children's needs for 

 Page 762 

support. Instead of separating alimony and child support, the parties designated the husband's entire obligation as "unallocated," theoretically allowing him to take advantage of any favorable tax treatment. See Huddleston, 51 Mass. App. Ct. at 565 n.4. We likewise agree that it was error to analyze the husband's request for modification under alimony principles only, while treating the changed circumstances relating to the children as wholly irrelevant. [Note 10] Accordingly, so much of the modification judgment as pertains to unallocated support must be vacated. The matter must be remanded for a redetermination of the husband's support obligation in light of all relevant and material changed circumstances. 

 b. Remand. In light of the foregoing, we touch upon certain issues raised by the parties that are likely to arise on remand. 

 i. Dividend income. The husband contends that the judge erred by considering his dividend income from BHE when calculating the modified unallocated support order, in violation G. L. c. 208, § 53 (c) and the separation agreement. 

 The act prohibits a judge from considering dividend income derived from an asset assigned in the divorce when fashioning an alimony order. See G. L. c. 208, § 53 (c) (1); Dolan v. Dolan, 99 Mass. App. Ct. 284, 288-289 (2021). By contrast, however, the guidelines expressly require a judge to consider dividend income when calculating a child support order. See Cavanagh, 490 Mass. at 421-422; Child Support Guidelines § I(A)(7), (8) (sources of income to be considered include "interest and dividends" and "income derived from businesses/partnerships"). Accordingly, there is nothing prohibiting a judge from considering dividend income available for the support of the children, for purposes of fashioning an appropriate unallocated support order. See 

 Page 763 

Cavanagh, supra at 424 n.24 (principles restricting consideration of income derived from assets received in divorce for purposes of alimony have "no bearing" on consideration of such income for purposes of child support). 

 To the extent that the husband argues that the wife expressly waived any right to the dividend income, we see no language in the agreement containing such a waiver. The husband relies on paragraph seven of exhibit B, which provides:

"For purposes of the within [a]greement, the parties acknowledge that [the] [h]usband derives income from [BHE] and that said [BHE] also has a fair market value as a marital asset subject to division between the parties. In consideration of the remaining provisions in this [a]greement, and except as otherwise provided in paragraph [eight] of this [e]xhibit B, [the] [w]ife hereby waives all right, title and interest in and to [the] [h]usband's interest in the fair market value of [BHE], including without limitation all assets and/or liabilities owned by [BHE] (which assets include cash, bank accounts, equipment and receivables); but, the parties further acknowledge that [the] [w]ife's waiver herein specifically excludes any waiver of the income that [the] [h]usband derives as an employee of [BHE] for purposes of [the] [h]usband's current and any future support obligation(s) to [the] [w]ife." 

 The husband claims that his dividend income from BHE "was used to value [his] business interest," and that thus the wife's waiver of his interest in BHE's fair market value contained an implicit waiver of his dividend income. The husband further claims that the last sentence of paragraph seven contains the wife's waiver of any and all BHE income except for the husband's salary. We disagree. The last sentence merely states that the wife is not waiving her interest in the husband's BHE salary. There is no language expressly waiving an interest in the dividend income from BHE. Cf. Computer Sys. of Am., Inc., 19 Mass. App. Ct. at 437 ("if the parties had intended at-will termination, they could have said so . . . expressly"). "Moreover, 'even if the [wife] did waive her right to any interest in the [dividend] income at issue, that waiver could not operate to waive her children's right to child support from that income.'" Fehrm-Cappuccino v. Cappuccino, 90 Mass. App. Ct. 525, 527 (2016), quoting Hoegen 

 Page 764 

v. Hoegen, 89 Mass. App. Ct. 6, 11 (2016). [Note 11] See Cavanagh, 490 Mass. at 422-423 (where child support guidelines expressly require judge to consider certain categories of income when calculating child support, separation agreement provision that seeks to preclude those categories is void). Accordingly, on remand, the judge is free to consider the husband's dividend income from BHE in connection with the support of the children. 

 ii. 18.54 percent delta. Both parties contend, and we agree, that the judge erroneously concluded that the parties agreed to calculate the husband's unallocated support as 18.54 percent of the delta between their incomes. This percentage does not appear anywhere in the agreement, either explicitly or by implication. If the parties intended for such a percentage to be used, they "easily could have included language" to that effect, but they did not. Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 806 (2016). The 18.54 percentage formula is also not rooted in any applicable alimony or child support principles. See G. L. c. 208, § 53 (b) ("amount of alimony should generally not exceed the recipient's need or 30 to 35 per cent of the difference between the parties' gross incomes"); Child Support Guidelines, principles. See also Brooks v. Piela, 61 Mass. App. Ct. 731, 737 (2004) ("consistent with principles underlying the guidelines, children's needs are to be defined, at least in part, by their parents' standard of living"). Here, the judge made no findings regarding the wife's needs or the children's needs. Accordingly, on remand, the judge should consider the appropriate criteria for modification of alimony and child support, including the needs of the wife and the children. [Note 12] 

 Page 765 

 2. College expenses. With respect to the children's college expenses, the judge found it "fair and equitable and in the best interests of the children" for the husband to pay for one-third, and the wife to pay for one-sixth, of such expenses; however, the judge "decline[d] to make this order retroactively" and did "not require [the wife] to contribute to [the elder child's] first year college expenses." The judge did not explain his rationale for declining to order the wife to contribute to the first year of college expenses, which the husband contends was an abuse of discretion. [Note 13] We agree with the husband. Because we cannot discern from the judge's findings or the record the basis for his decision to relieve the wife of responsibility for the elder child's first year of college, a remand is necessary. See Pierce v. Pierce, 455 Mass. 286, 306 (2009). Moreover, because the issue of college contribution is intertwined with the issue of child support, the entire college expense provision of the modification judgment must be vacated and remanded for redetermination in light of all relevant circumstances. 

 Conclusion. So much of the modification judgment as pertains to unallocated support and college expenses is vacated. The modification judgment is otherwise affirmed. The case is remanded for further proceedings consistent with this opinion. [Note 14] 

 So ordered.

FOOTNOTES
[Note 1] The parties' younger child was age fourteen and was slated to enter high school in the fall of 2019. 

[Note 2] The modification judgment further provided that neither party would "be required to pay more than the in-state cost of attendance of [the] U[niversity of] Mass[achusetts] [at] Amherst for either respective child in any respective year." We note that this language appears to contain a scrivener's error insofar as each party's contribution should be capped at "fifty percent of the undergraduate, in-state resident costs of the University of Massachusetts-Amherst, unless the [c]ourt enters written findings that a parent has the ability to pay a higher amount" (emphasis added). Child Support Guidelines § II(G)(3), effective Sept. 15, 2017, as amended, June 15, 2018. 

[Note 3] "When an agreement merges, and does not survive the judgment as an independent contract, a party seeking modification need not demonstrate more than a 'material change of circumstances' since the earlier judgment." Huddleston v. Huddleston, 51 Mass. App. Ct. 563, 564 n.2 (2001), quoting Harris v. Harris, 23 Mass. App. Ct. 931, 932 (1986). 

[Note 4] The judge found that the wife's net worth had decreased slightly, from $567,461.14 at the time of the divorce to $502,373.37 at the time of the modification trial. 

[Note 5] The judge found that the husband's net worth had decreased somewhat, from $1,001,561.01 at the time of the divorce to $679,033.88 at the time of the modification trial. 

[Note 6] On her financial statement, the wife reported total weekly paycheck deductions of $358.32 and weekly expenses of $2,042.81, leaving a weekly deficit of $1,172.18 after deducting her expenses from her income (exclusive of unallocated support). 

[Note 7] The judge noted that, pursuant to G. L. c. 208, § 49 (b) (4), the presumptive maximum duration for alimony would be 163.2 months (eighty percent of the length of the parties' 204-month marriage), which corresponded with the termination date of January 1, 2031, set forth in the separation agreement. 

[Note 8] Child support, unlike alimony, does not terminate upon the remarriage of the recipient. See, e.g., Murray v. Super, 87 Mass. App. Ct. 146, 154-155 (2015). 

[Note 9] Compare 26 U.S.C. §§ 71(a)-(b), 215(a)-(b) (allowing payor deductions for qualified alimony payments), with 26 U.S.C. § 71(c)(1) (payments for support of payor's children not deductible). Although these statutes were repealed by the Tax Cuts and Jobs Act of 2017 (TCJA), alimony obligations established on or before December 31, 2018, remain tax deductible under the pre-TCJA rules (including those that have been subsequently modified). See Pub. L. No. 115-97, Title I, § 11051(c), 131 Stat. 2090 (2017). Because the divorce judgment in this case entered in 2017, the husband's unallocated support obligation falls under the pre-TCJA rules. 

[Note 10] We recognize that identifying any portion of an unallocated support order as child support, or reducing it upon the happening of a child-related contingency, may carry potential tax consequences. See 26 U.S.C. § 71(c)(1), (2). The husband (who arguably benefits the most from the tax deductibility of his support payments) contends that his unallocated support obligation was intended to be a hybrid of alimony and child support, and that the judge erroneously treated the changed circumstances relating to the children as immaterial for purposes of modifying unallocated support. The husband did not, however, present evidence of the potential tax consequences resulting from a downward modification of unallocated support based on a child-related event. Accordingly, we do not address them. Cf. Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 866 (1989) (parties are responsible for presenting tax implications of order for division of marital assets to court). 

[Note 11] We are likewise unpersuaded by the husband's contention that this amounted to inequitable double dipping. The husband has not demonstrated that his fifty percent interest in the fair market value of BHE is somehow diminished by treating the dividends as a stream of income available for purposes of support, as the dividends represent recurring profit, see Black's Law Dictionary 601 (11th ed. 2019) (defining "dividend" as "[a] portion of a company's earnings or profits distributed pro rata to its shareholders"), rather than a diminishment of the business's capital assets. See Fehrm-Cappuccino, 90 Mass. App. Ct. at 527-528; Champion v. Champion, 54 Mass. App. Ct. 215, 220-222 (2002). In any event, double dipping is not prohibited as a matter of law. Fehrm-Cappuccino, supra at 527 n.4. 

[Note 12] The wife contends that no downward modification of unallocated support was justified because even with her increased income, she continued to have a need for support of at least $850 per week, and the husband remained able to pay that amount. Because the modification of unallocated support must be remanded for reconsideration based on all relevant circumstances (including the parties' financial circumstances and the children's circumstances), we need not reach the merits of the wife's argument. We note, however, that she is free to raise that issue before the judge on remand, given that no findings were made regarding her claimed need for support. 

[Note 13] The wife conceded at oral argument that the judge should have explained his rationale regarding the first year of college expenses. 

[Note 14] Prior orders in this matter, unaffected by this opinion, shall remain in effect pending the resolution of this case on remand. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.