NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-480

DEBORAH OPERACH

vs.

RICHARD PELTON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

At issue is whether a Probate and Family Court judge erred by interpreting the parties' separation agreement to require the father to share certain payments with the mother.  Because we conclude the judge did not err, we affirm.

Background.  In 2012, the parties executed a separation agreement that contained provisions dedicated to "settle and determine . . . [a]n equitable distribution of property."[1] Exhibit G(6) of the agreement, as pertinent to this appeal, provided:

> "6.  [Father]'s Miscellaneous Investments.  [Father] shall pay [Mother] 50% of any after tax net payment received from his investment in the purchase and or development of [certain] real estate . . . within 30 days of receipt from same . . . [and Father] shall provide [Mother] with all documentation relating to the receipt of funds and the

---

[1] These particular provisions of the separation agreement were incorporated but not merged with the judgment of divorce nisi.

payment of any taxes, if any, associated with the respective properties/investments within 30 days of the receipt of said funds [emphasis added]."

In June 2019 the mother filed her first complaint for contempt alleging the father had failed to either account for or provide her half of the "after tax net payment[s]" he had received from investments subject to Exhibit G(6). The judge found the father guilty of contempt and ordered the father to comply with the provision by providing fifty percent of the payments to the mother.

The mother filed her third complaint[2] for contempt in July 2021, alleging the father continued to refuse to make the required payments. The father did not dispute that he had received payments from the investments subject to division under Exhibit G(6), that the payments were free from tax consequences, or that he had entered into an agreement to continue to receive such payments. However, the father argued that he had no obligation to share the payments with the mother because they did not qualify as "after-tax net payment[s]." In support of his position, the father maintained that the phrase "after-tax

_____

[2] On September 11, 2019, the mother filed her second complaint for contempt, re-alleging that the father had failed to provide her with either her share or an accounting of additional "after tax net payments" he had received. The judge did not hold the father in contempt after finding that, although the father had negotiated for additional payments subject to Exhibit G(6), he had not yet received them.

2

net payment" was limited by its terms to any profits received on the underlying investments, which would be calculated only after the investment's principal -- a home equity loan assigned to the father in the divorce -- was repaid.  The judge[3] rejected the father's interpretation of the provision and ordered him to pay fifty percent of the sum of settlement payments he had received.[4] The father timely appealed.

   Discussion.  The issue on appeal is whether the judge erred by interpreting the parties' separation agreement as obligating the father to provide fifty percent of the contested payments to the mother.[5]  The father maintains his argument that the phrase "after tax net payment" in Exhibit G(6) applies solely to any profits from the investment, which would be calculated only after the principal for the basis of the investment was repaid. The mother counters that the father's interpretation is

---

[3] The same judge presided over all three contempt hearings described above.

[4] The judge did not find the father to be in contempt.  We infer from the record that the judge treated this third contempt hearing as a continuation of the first and second contempt proceedings and chose to clarify her previous formal adjudication of contempt with her judgment.  See Poras v. Pauling, 70 Mass. App. Ct. 535, 543-544 (2007).

[5] Although the father included two additional claims in his brief, appealing (1) a guilty finding of contempt and (2) that the provision at issue was ambiguous, at oral argument he (1) conceded the judge did not find him guilty of contempt, (2) waived his claim as to whether the provision at issue was ambiguous, and (3) agreed the only issue is proper interpretation of the separation agreement.

3

erroneous since the provision at issue contains no such limiting language.

Interpreting the meaning of a term in a separation agreement presents a question of law that we consider de novo. Cavanagh v. Cavanagh, 490 Mass. 398, 413 (2022). Since the provisions of the separation agreement at issue here were incorporated but not merged in the divorce judgment, they retain force as an independent contract. See Krapf v. Krapf, 439 Mass. 97, 103 (2003). "When contract language is unambiguous, it must be construed according to its plain meaning." Balles v. Babcock Power Inc., 476 Mass. 565, 571-572 (2017). See General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007). Justice, common sense, and the probable intent of the parties guide the court's construction of the agreement. Fried v. Fried, 5 Mass. App. Ct. 660, 664 (1977).

We begin our review by examining the language of the separation agreement,[6] as it provides the best evidence of the parties' intent. Duval v. Duval, 101 Mass. App. Ct. 752, 758 (2022). See Robert Indus., Inc. v. Spence, 362 Mass. 751, 755

---

[6] Our construction of the meaning of the language at issue is informed by our recognition that the separation agreement clearly represents a carefully drafted, comprehensive document which incorporates the results of a negotiated settlement between the parties, both of whom were represented by counsel. See Fried, 5 Mass. App. Ct. at 663-664.

4

(1973).  The language at issue here -- "after tax net payments" -- is readily ascertainable, as each word has a well-defined, commonly understood meaning, and the construction of the phrase is equally unambiguous.  This provision provides that the tax on any payment is the only deduction to which the father is entitled.  Exhibit G(6) includes no other language qualifying the payments, and we are not persuaded by the father's claim that the parties intended the provision to be limited to "net income" or "net profit," since the parties did not include such meaningful and precise terms in the provision.  See, e.g., Fried, 5 Mass. App. Ct. at 663 n.3 (if parties intended college payments in addition to child support, "then they could reasonably have been expected to use language which was indicative of that result").  In determining the meaning of the provision's language, we are mindful to refrain from altering the parties' agreement by adding terms the parties did not include.  Rogaris v. Albert, 431 Mass. 833, 835 (2000).  See Robbins v. Krock, 73 Mass. App. Ct. 134, 138-139 (2008) (parties are bound by language they chose).

Additionally, the father has offered no authority supporting his definition of the term "payment," and we conclude that "a fair reading of the agreement would not support the [father]'s interpretation, nor raise a question as to the agreement's meaning such that reasonable minds might differ."

5

Colorio v. Marx, 72 Mass. App. Ct. 382, 388-389 (2008). The judge's determination that the agreement required the father to provide fifty percent of whatever amounts he received as a result of the specified investments to the mother, less any taxes, is the only interpretation consistent with the plain meaning of "after tax net payment." See Lieber v. President & Fellows of Harvard College (No. 2), 488 Mass. 816, 823 (2022) ("When the words of a contract are clear, they control, and we must construe them according to their plain meaning").

The father's argument concerning the inclusion and force of the home equity loan[7] as subordinating the mother's stated interest in the provision's allocation of payments is further foreclosed when considering the separation agreement contains a separate provision concerning that loan, which provides: "[Father] shall be solely responsible to pay the outstanding second mortgage or the Home Equity Line of Credit of record out of his share of the net proceeds derived from the sale [of the marital home]." Thus, we decline to construe "after tax net payments" as implicitly incorporating the repayment of the father's home equity loan as a condition precedent to the mother's stated interest in the payments since such an interpretation would be contrary to the parties' explicit

---

[7] We note that the father's financial statement from October 2021 does not list an outstanding home equity loan.

6

agreement.  See Brigade Leveraged Capital Structures Fund Ltd.

v. PIMCO Income Strategy Fund, 466 Mass. 368, 376 (2013).  The

father's interpretation would require us to ignore the

independent legal significance of the terms of Exhibit G(6), and

essentially "alter[] what [these] divorcing parties have

provided for themselves."  McCarthy v. McCarthy, 36 Mass. App.

Ct. 490, 492 (1994).

Examining Exhibit G(6)'s plain language in the context of

the entire separation agreement, the provision unambiguously

requires the father to account for and share the settlement

payments with the mother, excepting only any taxes on the

payments.  See Duval, 101 Mass. App. Ct. at 757-758, and cases

cited.  Accordingly, we affirm the judgment.

The mother's request for attorney's fees and costs pursuant

to paragraph twelve of the separation agreement is allowed.[8]

Consistent with the procedure set forth in Fabre v. Walton, 441

Mass. 9, 10-11 (2004), the mother may file an application for

appellate attorney's fees and cost within fourteen days of the

---

[8] Paragraph twelve provides, "Each party agrees to fully
indemnify and hold the other harmless from any liability that
may be occasioned by her respective breach of an obligation
contained in this Agreement, including reasonable attorneys'
fees, costs, and expenses incurred as a result of such breach,
or as a result of resisting or defending any claims or demands
made by the breaching Party."

issuance of the rescript.  The father will have fourteen days thereafter to respond.[9]

Contempt judgment entered October 21, 2021, affirmed.

By the Court (Wolohojian, Neyman & Smyth, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  June 6, 2023.

---

[9] The mother's request for sanctions against father is denied. We likewise deny father's request for fees and costs.
[10] The panelists are listed in order of seniority.