NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-703

LESLIE A. SCOPA BRAUNSTEIN[1]

vs.

DONNIE BRAUNSTEIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff (wife) appeals from a judgment issued by a judge of the Probate and Family Court finding the defendant (husband) not guilty of contempt. The wife contends that the judge abused her discretion in finding that the husband, her former spouse, did not violate the terms of the parties' merged separation agreement by reducing, and eventually ceasing, "regular" alimony payments upon his retirement. We vacate the judgment and remand the case to the Probate and Family Court for further proceedings consistent with this memorandum and order.

---

[1] As is our custom, we take the plaintiff's name from the underlying complaint.

Background.  The parties were married on June 28, 1986.  On October 2, 2013, a judge of the Probate and Family Court entered a judgment of divorce nisi incorporating the separation agreement of the same date.[2]  The alimony provisions of the separation agreement merged with the judgment of divorce.

The merged portion of the separation agreement obligated, inter alia, the husband to pay "[r]egular [a]limony . . . in the amount of thirty-five percent (35%) of [the husband's] base salary" and "supplemental alimony" equivalent to thirty-five percent of "any gross . . . annual earnings or compensation he receives from any and all sources."  The parties also "agreed to deviate from the Alimony Reform Act of 2011 . . . as it pertains to the termination of alimony . . . such that [the husband's] alimony obligation will not automatically terminate upon [the husband] reaching full social security retirement age."  "To modify the existing alimony order, either party will be required to file a [c]omplaint for [m]odification."

On November 29, 2022, the husband sent the wife a letter stating that he would retire during the first half of 2023.  Through July 2023, the husband paid regular alimony in accordance with the merged agreement, totaling $10,962 monthly.  On July 14, 2023, the husband retired at the age of sixty-six

_____

[2] The judge who entered the judgment of divorce is not the one who presided over the contempt proceeding.

2

and has not worked since.  Between August and December 2023, the husband paid the wife partial regular alimony totaling $4,600.52 monthly because he believed that to be the difference between the amount of preretirement regular alimony he owed ($10,962) and the monthly pension disbursement to which the wife was entitled (approximately $6,000).  The husband ceased paying regular alimony in December 2023.

In June 2023, the husband filed a complaint for modification seeking termination of his alimony obligation as of July 14, 2023, on the basis that his planned retirement due to alleged health issues constituted a material change in circumstances.  In August 2023, the wife filed a complaint for contempt against the husband for underpaying alimony by $6,361.49 and for future amounts that would accrue before the date of the hearing.  The judge held an evidentiary hearing on February 12, 2024, and subsequently made findings of fact regarding only the contempt claim.[3]

The judge found the husband not guilty of contempt.  The judge reasoned that the "[s]eparation [a]greement is clear and unequivocal -- [the] [h]usband must pay 35% of his base salary;" therefore, because the "[h]usband . . . has not received any

---

[3] The judge declined to consolidate the modification and contempt actions.  At the time of the appeal, the action for modification was still pending.

employment income since [his retirement] . . . he . . . has not had an obligation to pay any alimony."

Discussion. "[T]o constitute civil contempt[,] there must be a clear and undoubted disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 851 (2009). The plaintiff bears the burden of proving contempt by clear and convincing evidence, and the judge shall consider "the totality of the circumstances." Voorhis v. Relle, 97 Mass. App. Ct. 46, 54 (2020), quoting Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009). Because this case turns on the obligations dictated by the separation agreement, we review only whether the alimony provisions of the agreement constitute a "clear and unequivocal command" to the husband to continue paying alimony in these circumstances. Birchall, petitioner, supra.

"The interpretation of the meaning of a term in a separation agreement or resulting divorce judgment is a question of law that we consider de novo." Cavanagh v. Cavanagh, 490 Mass. 398, 413 (2022). "[B]ecause a separation agreement is a contract, to the extent that a judgment incorporates the terms of a separation agreement, we may apply contract principles to the interpretation of the judgment." Cavanagh, supra. "Language in a separation agreement or resulting divorce judgment is ambiguous when it can support a reasonable difference of opinion as to the meaning of the words employed

4

and the obligations undertaken" (quotation and citation omitted).  Id.

At issue in this matter are two provisions of the separation agreement that are in tension with each other.  The first is the "regular alimony" provision, which obligates the husband to pay thirty-five percent of his base salary to the wife.  The second is the termination provision, which states that the parties "agreed to deviate" from the Alimony Reform Act (act) "as it pertains to the termination of alimony . . . such that [the husband's] alimony obligation will not automatically terminate upon [the husband] reaching full social security retirement age."  The facts of this case illustrate why these provisions are ambiguous when read together.  The husband, despite the termination provision that (absent a modification) extended his alimony obligation past his retirement, sought to reduce his payment of regular alimony to zero dollars by voluntarily reducing his salary to zero dollars.  When read in isolation, the percentage-based obligation for paying regular alimony might seem to allow the husband to cease paying upon ceasing work, conflicting with the parties' agreement that the husband seek a judicial modification before terminating alimony payments even upon reaching full retirement age.  Read together, once the husband attains full retirement age, the provisions may risk negating each other.

The ambiguity is evident in the parties' positions -- each maintains the agreement is unambiguous, with each asserting the opposite meaning as correct.  On appeal, the wife contends that the judge erroneously interpreted the two provisions and asserts that the provision stating the parties' intent to deviate from the act obligated the husband "to pay alimony at the same amount even after he reaches full retirement age unless and until a trial court judge first modifies those obligations pursuant to a [c]omplaint for [m]odification."  The husband challenges the wife's interpretation, adopting the judge's reasoning that he did not violate his alimony obligation because thirty-five percent of zero income results in a zero-dollar regular alimony payment under the agreement.

Neither interpretation is self-evidently correct, because each interpretation appears to place too much weight on one provision and too little on the other.  The agreement must be "construe[d] . . . based on 'a fair construction of the contract as a whole and not by special emphasis upon any one part,'" Duval v. Duval, 101 Mass. App. Ct. 752, 757-758 (2022), quoting Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005), "while also recognizing that 'every word is to be given force so far as practicable.'"  Duval, supra at 758, quoting MacDonald v. Hawker, 11 Mass. App. Ct. 869, 872-873 (1981).

Without extrinsic evidence supporting her interpretation, the wife's reading is insufficient to support a finding of contempt because it fails to account for the provision of the agreement stating the husband's monetary obligation as a percentage of his base salary, without regard to whether or why that salary might have decreased to zero dollars. See Wooters, 74 Mass. App. Ct. at 844, quoting Stabile v. Stabile, 55 Mass. App. Ct. 724, 726-727 (2002) ("[i]ndefinite and uncertain language cannot support a complaint for contempt because of a lack of fair notice"). Similarly, without extrinsic evidence supporting his interpretation, the husband's reading is insufficient because it gives too little weight to the parties' stated intent to deviate from the termination provisions of the act. It provides an avenue through which the husband could evade the requirement that the parties seek a judicial modification to terminate the alimony obligation. See Cavanagh, 490 Mass. at 414, quoting Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712, 713 (1995) ("A separation agreement or resulting divorce judgment 'should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase'").

Both interpretations proposed by the parties fail to consider other plausible readings of the two provisions. Where, as here, "a separation agreement 'is susceptible of more than

one meaning and reasonably intelligent persons would differ as to which meaning is the proper one,' the language is ambiguous, and resort may be made to extrinsic evidence." Jones v. Jones, 101 Mass. App. Ct. 673, 681 (2022), quoting Bercume v. Bercume, 428 Mass. 635, 641 (1999).  On remand, to resolve the ambiguity of the agreement, the judge should consider extrinsic evidence provided by the parties regarding their intent in drafting the seemingly contradictory provisions.  This evidence should inform an interpretation that "'accord[s] with justice and common sense and the probable intention of the parties . . . [and] accomplish[es] an honest and straightforward end [and avoids], if possible, any construction . . . that is unreasonable or inequitable.'" Krapf v. Krapf, 439 Mass. 97, 105 (2003), quoting Clark v. State St. Trust Co., 270 Mass. 140, 153 (1930). The extrinsic evidence also "cannot be used to contradict or change the written terms, but only to remove or to explain the existing uncertainty or ambiguity." General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 836 (2007).

Conclusion.  The judgment dated March 27, 2024, finding the husband not guilty of contempt, is vacated.  The case is

8

remanded to the Probate and Family Court for further proceedings consistent with this memorandum and order.[4]

So ordered.

By the Court (Sacks,
  Hershfang & Tan, JJ.[5]),

Clerk

Entered:  July 15, 2025.

---

[4] The husband's request for appellate fees is denied.

[5] The panelists are listed in order of seniority.