NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1259

ARUN KUMAR SHASTRY

vs.

SANGITA RANI SHASTRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Sangita Rani Shastry (wife), the former spouse of Arun Kumar Shastry (husband), appeals from an amended judgment of modification (modification judgment) issued by a judge of the Probate and Family Court on June 26, 2024, which reduced the husband's alimony obligation from $1,000 to $580 per week (as of December 5, 2023).  We affirm.

Background.  We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion. Cavanagh v. Cavanagh, 490 Mass. 398, 399 (2022).

After approximately twenty-six years of marriage, the parties were divorced in February 2021.  The judgment of divorce

nisi (divorce judgment) incorporated a separation agreement executed by the parties (the relevant provisions of which merged with the divorce judgment) settling their financial matters. The parties agreed, among other things, that the husband would pay general term alimony to the wife of $1,000 per week, which amount was equivalent to approximately twenty percent of the difference between the parties' gross base salaries. At the time of the separation agreement's execution, the wife was earning a base salary of $104,000 per year ($2,000 per week) working as a part-time software engineer, and the husband was earning a base salary of approximately $360,000 per year ($6,923 per week) working for Berkshire Hathaway (Berkshire).

Following the divorce, both parties' employment and base salaries changed. The wife accepted a full-time position as a software engineer earning a base salary of approximately $209,000 ($4,020 per week), more than double the amount of her previous base salary. In or around October 2022, the husband voluntarily resigned from Berkshire and accepted a position with Marsh McLennan, earning a base salary of approximately $250,000 per year ($4,808 per week), approximately thirty percent less than his base salary at the time of the divorce.

In October 2022, the husband filed a complaint for modification, asserting that his decreased income and the wife's increased income constituted a material change in circumstances

2

warranting a reduction or termination of alimony.  Following a one-day trial, the judge found that the husband's reduced income was solely the result of his voluntary career change and attributed income to him equivalent to his earnings at Berkshire at the time of the divorce.  Based on that attribution of income, the judge determined that there had been no material change in the husband's ability to pay alimony.  The judge found that the wife continued to need alimony in order to maintain the marital lifestyle, noting that she reported a shortfall (after deducting her weekly expenses from her net base salary) both at the time of the divorce and at the time of the modification trial.  The judge, however, concluded that the wife's substantial postdivorce increase in income had reduced her need for alimony, thereby constituting a material change in circumstances warranting a downward modification of alimony. The judge ultimately reduced the husband's alimony obligation to $580 per week, which she calculated using the same percentage formula used by the parties when calculating the original alimony order of $1,000 per week (i.e., approximately twenty percent of the difference between the parties' gross base salaries[1]).  The present appeal followed.

---

[1] The modified alimony order of $580 per week was equivalent to approximately twenty percent of the difference between the husband's attributed gross base salary ($6,923 per week) and the

Discussion. We review a judge's modification of alimony for an abuse of discretion. See Smith v. Smith, 105 Mass. App. Ct. 505, 508 (2025). "'[A]ctions to . . . modify alimony are governed by the Alimony Reform Act' (act), G. L. c. 208, §§ 48-55." Smith, supra, quoting Emery v. Sturtevant, 91 Mass. App. Ct. 502, 507 (2017). "Unless the payor and recipient agree otherwise, general term alimony may be modified in . . . amount upon a material change of circumstances warranting modification." G. L. c. 208, § 49 (e).

Where, as here, the judge modified an alimony obligation set forth in a merged separation agreement, we review the findings and rulings to ensure that the judge (1) considered the parties' intentions expressed in their agreement, see Smith, 105 Mass. App. Ct. at 514; and (2) considered the relevant statutory factors set forth in G. L. c. 208, § 53 (a),[2] while keeping in

_____

wife's actual gross base salary at the time of the modification trial ($4,020 per week). The judge excluded from the alimony calculation all bonus income received by the parties, finding that they "disregarded bonuses in their [s]eparation [a]greement and there is no change in circumstance which would warrant consideration of any bonuses now." The wife does not challenge this approach.

[2] The other statutory "parameters" recited in Smith, 105 Mass. App. Ct. at 509, are not at issue in this appeal. The modified alimony award does not exceed the amount limits set forth in G. L. c. 208, § 53 (b), and the wife has not challenged the judge's decision to disregard the parties' bonus income when calculating alimony, see note 1, supra.

4

mind that, "where the supporting spouse has the ability to pay, 'the recipient spouse's need for support is generally <u>the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage</u>.'" <u>Smith</u>, <u>supra</u> at 509, quoting <u>Cavanagh</u>, 490 Mass. at 407-408. We will not disturb a judge's decision to modify alimony where her findings reflect appropriate consideration of the aforementioned criteria and "the reason for her conclusion is apparent in her findings." <u>Smith</u>, <u>supra</u>, quoting <u>Cavanagh</u>, <u>supra</u> at 408.

The wife contends that it was improper to reduce the husband's alimony obligation where the judge's findings established that the husband's ability to pay had not changed, and the wife continued to have a shortfall exceeding the original alimony order of $1,000 per week, even after accounting for the postdivorce increase in her income. We disagree.

1. <u>Parties' intentions</u>. "A judge who modifies a divorce judgment [incorporating a merged agreement] does not write on a tabula rasa. To the extent possible, and consistent with common sense and justice, the modified judgment should take into account the earlier, expressed desires of the parties." <u>Smith</u>, 105 Mass. App. Ct. at 513-514, quoting <u>Katzman</u> v. <u>Healy</u>, 77 Mass. App. Ct. 589, 598 (2010).

Here, the parties expressly stated in their separation agreement

5

> "that the amount, duration and applicability of the various alimony components as established in this case are specifically contingent upon the presumption that the Husband is NOT able [to] deduct the alimony payments from his gross income for federal and state tax purposes and that the wife is NOT required to include the alimony payments in her gross income for federal and state tax purposes."

Although not expressly stated in the agreement, the husband confirmed at trial that the agreed-on alimony amount of $1,000 per week was calculated at twenty percent of the difference between the parties' gross base salaries at the time of the divorce.[3]  The wife did not refute this.[4]

Even without the benefit of the husband's unchallenged testimony, a fair reading of the agreement permits the inference that the parties utilized a twenty percent income differential to calculate alimony, because (1) $1,000 is equivalent to

_____

[3] Prior to the Tax Cuts and Jobs Act of 2017 (TCJA), alimony was tax deductible by the payor spouse and treated as taxable income to the recipient spouse.  See Duval v. Duval, 101 Mass. App. Ct. 752, 761 n.9 (2022).  Pursuant to the TCJA, alimony obligations established after December 31, 2018, are neither tax deductible by the payor nor includable in the recipient's taxable income.  See id.  The percentage guidelines in the act, G. L. c. 208, § 53 (b), capping alimony at thirty to thirty-five percent of parties' income differential, were based on pre-TCJA tax treatment of alimony obligations.  See Massachusetts Divorce Law Practice Manual § 9.9 (Mass. Cont. Legal Educ. 5th ed. 2023).

[4] Contrast Duval, 101 Mass. App. Ct. at 764 (both parties challenged judge's erroneous conclusion that they intended to calculate unallocated support at 18.54 percent of their income differential, which did not appear anywhere in their agreement "either explicitly or by implication").

6

approximately twenty percent of the difference between the gross weekly incomes reported on the parties' financial statements filed with the agreement; and (2) the agreement reflects the parties' implicit acknowledgment that alimony equivalent to twenty percent of their income differential achieves the desired tax-affected result.

Consistent with the parties' intentions, the judge calculated alimony at approximately twenty percent of the difference in the parties' incomes at the time of the modification trial, arriving at the modified alimony award of $580 per week. The judge also implicitly considered that the original amount negotiated by the parties of $1,000 per week did not fully meet the wife's need as measured by the marital lifestyle, and that the wife would continue to have a shortfall with the modified award, as more fully discussed infra. As the parties' separation agreement formed the baseline against which the husband's request for alimony was to be measured, the judge appropriately considered the parties' intentions when calculating alimony with the same formula used by the parties to calculate the original agreed on alimony obligation of $1,000 per week. See Smith, 105 Mass. App. Ct. at 514.

2. Statutory factors and need. In addition to reflecting appropriate consideration of the parties' intentions, the judge's findings reflect appropriate consideration of all

7

statutory factors on which evidence was presented by the parties, including the marital lifestyle and each party's ability to maintain that lifestyle postdivorce. See G. L. c. 208, § 53 (a).[5]

In considering the marital lifestyle, judges will typically make findings detailing the parties' historical spending habits and other financial practices during the marriage. See, e.g., Openshaw v. Openshaw, 493 Mass. 599, 607 (2024); Young v. Young, 478 Mass. 1, 4 (2017); D.L. v. G.L., 61 Mass. App. Ct. 488, 490-491 (2004). Here, however, the judge was unable to make such findings because the parties did not present evidence establishing the details of their shared lifestyle prior to separating in June 2019. The judge's consideration of the marital lifestyle was thus confined to evidence regarding the parties' expenses reported on their respective financial statements around the time of executing the separation agreement in late 2020 (after they had already been separated for over one year), and the modification trial in 2023.

---

[5] The judge also considered the § 53 (a) factors pertaining to the length of the marriage, the parties' ages, and the parties' income, employment, and employability. The parties did not present any meaningful evidence on the remaining factors of health, economic and noneconomic contributions, and lost economic opportunity. See G. L. c. 208, § 53 (a).

8

The wife contends that it was error to reduce alimony where the judge found that (1) weekly expenses of $4,500 were consistent with the marital lifestyle; and (2) after deducting $4,500 in weekly expenses from the wife's net income, she had a shortfall of nearly $2,000 per week. We read the judge's findings somewhat differently.

The judge credited the wife's testimony that her reported weekly expenses of approximately $2,885 at the time of the divorce did not accurately reflect the marital lifestyle, as her standard of living had declined during the parties' separation. The judge acknowledged the wife's testimony that the husband's reported weekly expenses of $3,797 and voluntary retirement contributions deducted from his paycheck of $692, totaling nearly $4,500 per week, more accurately reflected the marital lifestyle. The judge did not, however, state whether she found that portion of the wife's testimony credible. Moreover, the judge specifically declined to credit approximately $577 per week in educational expenses that the husband reported paying on behalf of the parties' emancipated daughter. Accordingly, even if the judge did generally credit the wife's testimony that the husband's expenses at the time of the divorce accurately reflected the marital lifestyle, the judge found the husband's credible reported expenses at the time of the divorce to be less than $4,000 per week (including his voluntary retirement

9

contributions).  Similarly, at the time of the modification trial, although the husband and the wife reported weekly expenses (including voluntary retirement contributions deducted from their paychecks) of $4,186 and $4,477, respectively, the judge found that their reported expenses were "overstated."[6]  The judge noted that the wife's reported expenses included $401 per week paid toward "her emancipated daughter's master's at Northeastern," which was similar to the educational expenses reported on the husband's divorce financial statement that the judge declined to credit.  Accordingly, it is reasonable to infer from the judge's findings that she viewed total expenditures of around $4,000 per week (including voluntary retirement contributions) -- rather than $4,500 per week -- to be generally consistent with the marital lifestyle.[7]

Deducting expenditures of $4,000 (along with all remaining reported paycheck deductions) from the wife's base salary results in a weekly shortfall of $2,563 at the time of the

----

[6] Notably, the judge found that, since the divorce, neither party's assets had decreased and neither party had incurred any ongoing liabilities (apart from the husband's car loan), suggesting that the parties were not liquidating assets or incurring debt to meet their expenses -- despite their claims of operating at a deficit.

[7] In support of the judge's findings, it is also reasonable to infer that, accepting weekly expenditures of $4,500 reflected the marital lifestyle, the parties could maintain the same lifestyle less expensively after they separated.

10

divorce, and $1,486 at the time of the modification trial, before any alimony is paid.  The judge's findings therefore reflect that the wife's need for alimony decreased by nearly $1,100 per week (roughly forty-two percent) as a result of the substantial postdivorce increase in her income.  The original, agreed on alimony order of $1,000 per week covered approximately thirty-nine percent of the wife's need at the time of the divorce ($2,563 per week).  Similarly, the modified alimony order of $580 per week covered thirty-nine percent of the wife's need at the time of the modification trial ($1,486 per week).  The judge thus ensured that the reduction in alimony was proportional to the reduction in the wife's need.

On this record, we cannot say that it was an abuse of discretion to reduce the husband's alimony obligation to $580 per week, where (1) the only material change in circumstances since the time of the divorce was the substantial increase in the wife's income (which significantly reduced her need for alimony), and (2) the amount of the modified alimony award, while not covering the wife's entire need, is consistent with the parties' intentions expressed in their separation agreement

(and covers the same percentage of the wife's need as the original award).[8]

Amended judgment of modification dated June 26, 2024, affirmed.

By the Court (Ditkoff, D'Angelo & Wood, JJ.[9]),

Clerk

Entered:   January 30, 2026.

---

[8] The husband's request for appellate fees is denied.

[9] The panelists are listed in order of seniority.

12